In re CRIBLIER.

(District Court, D. Connecticut. January 5, 1911.)

No. 2,299.

1. BANKRUPTCY (§ 314*)—SALE OF BUSINESS—NONCOMPLETION OF CONTRACT—DAMAGES.

   Where, after a sale of a bankrupt's saloon business for $1,400 as a going business, the trustee delivered the keys to the attorney for the landlords, who refused to give possession to the purchaser pursuant to a notice given at the sale that they would not lease the premises to any purchaser except L., and, after the purchaser had failed to get possession, he sold the property so purchased to L. for $2,000, he was not entitled to the allowance of a claim against the bankrupt's estate for a cash disbursement made in his endeavor to secure possession of the property purchased.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 314.*]

2. BANKRUPTCY (§ 272*)—DISBURSEMENT BY TRUSTEE—REMOVAL OF GOODS.

   Where, after a sale of a bankrupt's business, the trustee turned over the keys to the attorney for the landlords, who were hostile to the purchaser, and refused to give the purchaser possession, and the landlords then notified the trustee to remove the property from the building within 48 hours, which he proceeded to do, while the purchaser was endeavoring to get possession, the trustee was not entitled to an allowance for the cost of removing the property and in storing it in another place.

   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 272.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. BANKRUPTCY (§ 314\*)—CLAIM—PAYMENT FOR WATER BY LANDLORD.**

Where the landlords' payment of a water bill for the premises which a bankrupt had occupied was made after they were in undisputed possession to avoid having the water shut off from the premises, and such payment was of benefit to themselves and their succeeding tenant, they were not entitled to an allowance thereof as a claim against the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 314.\*]

**4. BANKRUPTCY (§ 318\*)—CLAIM—LANDLORDS' RIGHT TO RENT.**

Where a bankrupt's trustee gave up the keys to the bankrupt's place of business almost immediately after he received them to the attorney for the landlords, the trustee incurred no liability for rent which accrued before he took possession.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.\*]

In Bankruptcy. In the matter of bankruptcy proceedings of Paul E. Criblier. On certificate of referee with reference to certain claims allowed and disallowed. Reversed in part, and affirmed in part.

The bankrupt, Criblier, who had been carrying on a saloon business in Waterbury, was adjudged a bankrupt November 12, 1909. At the hearing of a petition for the appointment of a receiver before the referee, it was stated that an application for a license had been made by Criblier, that the business was still going on, and that the place would sell for more if the business was continued than if it was closed. A receiver was appointed, the property appraised and advertised, a trustee was elected at the creditors' first meeting, and the creditors directed that the property, consisting of the stock, furniture, and implements on hand, and the good will of the business, and whatever right to possession or lease Criblier had in the building wherein the business was carried on should be immediately sold. The referee also announced that the sale included whatever right in the application for a license and right to a license the trustee could convey. At the sale one Cassidy, who had been attorney for the bankrupt, also appeared for a Mr. Lindermann and the owners of the property leased to the bankrupt, and announced at the sale that no purchaser except Mr. Lindermann would be given a lease of the premises, and that the owners had agreed to lease to Lindermann. Claimant John J. O'Neill, who desired to purchase, stated that the question of the lease would have to be determined thereafter, and expressed his intention if he obtained the property of maintaining that the bankrupt had a lease, although he did not claim that it was in writing. No written notice to quit had been given the bankrupt, and on the bidding the property was sold to O'Neill for $1,400; all the creditors present and their representatives, including Mr. Cassidy, agreeing that O'Neill's bid should be accepted. The trustee then qualified in order to convey the property to O'Neill, and, the receiver having turned over the keys to the trustee, the latter delivered them to Cassidy for the owners, on Cassidy's guaranty that the estate would not suffer, that if Mr. O'Neill did not pay the $1,400 some one else would, and that he would hold the trustee harmless from liability on his bond. O'Neill before 4 o'clock on the day of the sale offered to pay the $1,400 and demanded the keys, but was informed that they had been given to Cassidy as attorney for the owners of the building. O'Neill was refused possession, and, while he was taking proceedings before the referee in Hartford to recover the property, a large part thereof was taken away from the bankrupt's place of business and stored in property belonging to one Blakeslee, the trustee having been notified by the owners of the building to remove the property within 48 hours, and the bill of the trustee for $48 is for the cartage and storage of the property. Thereafter, and on February 10, 1910, Lindermann paid O'Neill $2,000 for the property, and his efforts to enforce his alleged rights under the purchase were withdrawn. O'Neill thereupon filed a claim for alleged cash disbursements amounting to $456, and testified that he

would have bid up to $2,000 for the busines if Lindermann had continued to bid against him and in his opinion the property was worth $3,500. Murphy, the trustee, testified that he thought O'Neill meant to get hold of the property and tie it up so that no one else "could get in there," and for this reason delivered the keys to Cassidy. He also testified that he was not informed that there was any order that he should transfer any right to the license which he could convey. Cassidy testified that he had acted jointly for Ohmeis & Co. and for Lindermann, and that it was the desire of Ohmeis that Lindermann should be the purchaser, and he was afraid O'Neill, with the aid of Criblier, the bankrupt, would keep possession of the property.

Wm. E. Thoms, for O'Neill.
John H. Cassidy, for trustee and owners.

PLATT, District Judge. These are the disputed points:—

1. John J. O'Neill filed a claim for cash disbursements amounting to $456. Some of this was paid out and some was not, but the referee makes no distinction in that respect. He allowed $75 of the claim, because, he says, O'Neill had a right to think, and did think, that he was buying a going business at the sale which took place at the time of the first meeting of creditors, November 22, 1909. Whether that sale was made by the receiver who had held possession prior to the election of the trustee, or by the trustee himself, cannot be easily determined; but it will be taken for granted that the trustee made the sale.

From the facts found by the referee his conclusion does not logically follow. Notice was given that the owners protested against the sale of the lease to any one except Mr. Lindermann, and Mr. O'Neill obviously bought a pig in a poke when the property was knocked down to him. Mr. O'Neill bought some property and took a chance, to keep it where it was, despite the owners' wishes about the matter. He made $600 on the trade, and the referee adds $75 to that. That is inequitable, and the order is revoked.

2. The trustee asks $48 for moving the property purchased by O'Neill away from the premises, but the circumstances of the case are such that he ought not to have it. The referee's order therein was right and is sustained.

3. The owners of the property paid the water bill in December, after they were in undisputed possession, to avoid having the water shut off from the premises. This was to benefit themselves and their new tenant, and they surely cannot expect the bankrupt's creditors to reimburse them for that outlay. In respect of that matter the order of the referee was right and is affirmed.

4. The trustee gave up the keys about as soon as he got them, and therefore incurred no liability for rent which had accrued before he took possession. If the owners had limited their claim to the time the bankruptcy receiver was in charge, the situation might be different; but this court has nothing to do with the treatment of the property by the state officer, and furthermore the position occupied by the owners in this matter is not one which entitles them to invoke the equity powers of the court.

The order of the referee disallowing that claim is affirmed.