jection be filed and affirmatively sustained, for reasons specifically enumerated in section 14 of the statute, and not otherwise.

[2] The objections herein, though put in several ways, amount to this, viz.: That the drug store really belonged to Jacob S. Kaufman, and, not having been included in his schedules, he is guilty of concealing assets and making a false oath, and therefore should not be discharged. There is a portion of one objection, which apparently seeks to assert that discharge should be refused because the surrender or transfer of the drug store from the Kaufmans to the Cantarows on April 22, 1912, was in fraud of creditors. This may be quite true, but the only conveyance of that kind which by section 14 of the act is made ground for refusing discharge is a transfer within four months of petition filed, and this transfer was nearly two years old when the petition herein was presented.

The sole question raised by this appeal is whether, within the statutory period, Kaufman owned the drug store or conveyed the same. It is apparently true that the Cantarows, who undoubtedly owned it in 1906, thereafter so arranged matters as to afford out of the business a livelihood to their sister and brother-in-law, giving them an opportunity to become owners upon payment of sums of money, too moderate to be explained otherwise than by family affection. There was no secrecy about this; all creditors could discover the actual status of affairs by investigating the public record office. One may suspect that the bankrupt's brother is really a servant, but there is no proof. Yet he took title from the Cantarows, who, if they wished to benefit the bankrupt without giving him property subject to payment of his debts, had the right of so doing, if the forms of law were observed. Legal formalities were observed, and we conclude with the District Judge that as matter of fact Kaufman did not own the drug store in question, nor any share thereof, for nearly two years prior to bankruptcy.

The order appealed from is affirmed, with costs.

---

In re BUDD.

(Circuit Court of Appeals, Second Circuit. January 9, 1917.)

No. 135.

BANKRUPTCY ⟨⟩255—RIGHT OF RECEIVER—POSSESSION OF LEASED PREMISES.
    Where the term of a lease was to begin at a date several months in the future, and it was agreed that the lessee, who had paid the first month's rent, should have possession rent free until the beginning of the term, that right inured to the benefit of the receiver in bankruptcy of the lessee, and the lessor cannot claim the reasonable rental of the premises during the time the receiver was in possession prior to the commencement of the term fixed by the lease.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 352; Dec. Dig. ⟨⟩255.]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of William Budd, bankrupt. Petition by the W. & E. Realty Company to revise an order of the District Court which reversed an order of the referee directing the trustee to pay the petitioner a certain sum for the occupation of the petitioner's premises by the receiver. Order of the District Court affirmed.

Ernst & Cane, of New York City, for petitioner.

Jesse S. Epstein, of New York City, for trustee.

Before COXE, WARD, and HOUGH, Circuit Judges.

COXE, Circuit Judge. On October 22, 1915, the W. & E. Realty Company leased to the bankrupt, William Budd, the premises known as 157 West Thirty-Fourth street, New York, for the term of five years and nine months, beginning May 1, 1916. The rent for the first year was $6,000 with a small advance for each year thereafter. The rent for the month of May, 1916, was paid in advance and the bankrupt entered into possession of the premises, no charge being made for the months intervening between October 22, 1915, and May 1, 1916. On January 21, 1916, an involuntary petition was filed and a receiver was appointed who remained in possession of the leased premises until March 15, 1916. The claim asserted by the landlord—the Realty Company—is that the receiver is liable for a reasonable rent during his occupation of the premises. The receiver, on the other hand, insists that by express agreement between the bankrupt and the Realty Company the bankrupt was permitted to occupy the premises until May 1, 1916, without compensation of any kind and that this right inures to the receiver who, in this respect, occupies the same position as the bankrupt, had no bankruptcy proceedings intervened. The referee decided that the receiver should pay for the use of the premises during the period which he occupied them. He says:

"Not holding possession under a lease accepted by himself or the trustee he cannot avail himself of any advantage which the bankrupt's lease carried after January 21, 1916."

The referee found that $883.18 was a reasonable sum for the receiver to pay for such occupancy and made an order accordingly. The District Court reversed this ruling holding, in substance, that the right of possession by reason of the payment of the May rent and the privilege of occupancy given by the landlord until that time, the trustee acquired the right to the possession of the premises as an asset of the bankrupt's estate.

The bankrupt by the provisions of the lease and agreement with the landlord was given the use of the premises rent free until June 1, 1916. There is no dispute as to this proposition and the only question is whether the receiver occupying the position of the bankrupt and standing in his shoes, is not entitled to the same rights. We cannot see why he is not so entitled. If the bankrupt had paid the rent in advance can there be a doubt that during the period for which the rent was paid the use of the premises belonged to the receiver or trustee? How is the situation altered because as part of the general transaction the period until June 1st was given free of rent? Having expressly

agreed that this period belonged to the bankrupt how can the landlord successfully claim that it belongs to him? In legal effect the possession of the premises was vested in the bankrupt until June 1, 1916.

The order of the District Court is affirmed.

---

NEILL et al. v. KINNEY.

(Circuit Court of Appeals, Third Circuit. January 25, 1917.)

No. 2167.

1. PATENTS ⬤═26(2)—INVENTION—COMBINATION OF OLD ELEMENTS.
   In looking for invention in a combination of old elements, the court is guided by the new and useful means which the combination may afford, or the new and useful results which may be obtained from it.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27, 30.]

2. PATENTS ⬤═328—VALIDITY AND INFRINGEMENT—OIL WELL DERRICK.
   The Neill patent, No. 933,386, for an oil well derrick of tubular metal, while not generic and for a combination of old elements, in view of its novel and useful qualities of simplicity, portability, durability, and economy, all of which have been recognized in the art in a marked degree, discloses patentable invention; also *held* infringed.

3. PATENTS ⬤═35—INVENTION—UTILITY OF DEVICE.
   While a mere summation of points of merit does not constitute invention, their presence in a markedly increased measure cannot be overlooked in estimating the utility of a device, and in determining whether it produces new and useful results, within the principle upon which patents are granted.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 39.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by Thomas A. Neill and Lee C. Moore & Co. against Frank Kinney. Decree for defendant, and complainants appeal. Reversed.

Frederick W. Winter, of Pittsburgh, Pa., for appellants.

Kay, Totten & Powell, of Pittsburgh, Pa. (Robert D. Totten, of Pittsburgh, Pa., of counsel), for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an action for infringement of Letters Patent No. 933,386, for an oil well derrick. Claim 1, being the only claim in issue, was held invalid by the District Court for want of patentable invention. The case comes before us on this single issue, infringement being found if the patent is valid. The claim fairly describes the invention, and is for a combination containing the elements we have numbered. It is as follows:

"1. A metal oil well derrick or tower, comprising (1) tubular leg sections, (2) clamping sockets uniting the ends of adjacent leg sections and (3) provided with two sets of perforated ears or flanges located substantially 90 degrees apart and each providing three perforations arranged in vertical rela-

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes