### In re BENGUIAT et al.
No. 29193–Y.

District Court, S. D. California, Central Division.
Aug. 30, 1937.

Swanwick, Donnelly and Proudfit and Donald O. Welton, all of Los Angeles, for petitioners.

Edward K. Zukerman and Joseph I. Siegel, both of Los Angeles, Cal., for the trustee, Hubert F. Laughharn.

YANKWICH, District Judge.

Upon a voluntary petition, filed January 12, 1937, the B. Benguiat Company, a copartnership composed of B. Benguiat and B. Benveniste, was adjudicated a bankrupt. They were occupying a two-story concrete building, in Los Angeles, Cal., under a lease, for a term commencing November 1, 1936, and ending October 31, 1939, which called, during the first year, for a rental of $250 per month, payable on the first day of each and every month. The receiver, and later the trustee, occupied the building from January 12, 1937, until March 11, 1937.

On April 15, 1937, Elsie B. Adams, Frederick H. Bosbyshell, Bertha C. Bosbyshell, and Anna Louise Gibbs, the lessors, petitioned the referee for an order directing the trustee to pay to them $500 as rent, for the use and occupancy of the building from the date of the adjudication to March 11, 1937. The referee allowed the claim in the sum of $125 only, being the rental from February 24th, the day on which, by notice, the lessors terminated the lease, to March 11th, the day on which the premises were surrendered by the trustee.

This review challenges the correctness of the Referee's decision.

The controversy centers around the meaning of the 1934 amendment to section 63a of the Bankruptcy Act, 11 U.S.C.A. § 103(a) and note.

A trustee occupying leased premises is liable for the reasonable value of such occupancy. If there be a lease, the rental reserved, if not unreasonable, is the criterion. See 6 Remington on Bankruptcy (4th Ed.1924) § 2659; Gilbert's Collier on Bankruptcy (4th Ed.1937) § 1281, p. 1002; In re McNeice (C.C.A.9, 1923) 287 F. 706; Gardner v. Gleason (C.C.A.1,

506

1919) 259 F. 755. And see In re Owl Drug Company (D.C.Nev.1935) 12 F.Supp. 446, 30 A.B.R.(N.S.) 709; Green v. Finnigan Realty Company (C.C.A.5, 1934) 70 F.(2d) 465; Petition of Colburn (C.C.A.1, 1926) 16 F.(2d) 780; In re Sherwoods, Inc. (C.C.A.2, 1913) 210 F. 754, Ann.Cas.1916A, 940; George v. Lee (C.C.A.2, 1937) 89 F.(2d) 37, 33 A.B.R.(N.S.) 620.

Has this right been affected by the amendment of 1934 to section 63a of the Bankruptcy Act?

■ The object of that amendment was to overcome the decision in Manhattan Properties v. Irving Trust Company (1934) 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824. Under it, claims of a landlord for damages by reason of the anticipatory breach of a lease caused by the tenant's bankruptcy were not provable, except when the lease provided for liquidation of damages in case of breach through bankruptcy or otherwise. See In re Owl Drug Company (D.C.Nev. 1935) 12 F.Supp. 439.

Mr. Justice Roberts, in City Bank Farmers Trust Company v. Irving Trust Company (1937) 299 U.S. 433, 437–439, 57 S.Ct. 292, 294, 81 L.Ed. 324, 32 A.B.R.(N. S.) 477, has described vividly the difficulties which confronted landlords under section 63a of the Bankruptcy Act, as interpreted by the courts, and which the 1934 amendment sought to overcome:

"Section 63a of the Bankruptcy Act of 1898 stated what claims should be provable in bankruptcy. The section gave a landlord no provable claim for rent to accrue after the trustee's rejection of a lease. The tenant's liability for future rent was not discharged and remained enforceable as installments of rent fell due. This was necessarily so, since future rent is demandable only in the amounts and at the times named in the lease and the total cannot be recovered at law in a lump sum in advance of accrual of the installments. This state of the law involved elements of hardship to both lessor and lessee. In the case of a corporate, and often in that of an individual lessee, the landlord's right to collect rent from a bankrupt tenant was valueless. On the other hand, if the landlord, notwithstanding rejection by the trustee, was compelled by its terms, or elected pursuant to its provisions, to treat the lease as still in force, he might throughout the remainder of the term harass the discharged bankrupt by successive actions for accruing rent and so retard or prevent the debtor's financial rehabilitation which the statute was intended to aid.

"Many leases provide for the termination of the tenant's estate upon his adjudication as a bankrupt, by the lessor's re-entry. *Under the old law such termination did not give rise to a provable claim for future rent, or for * * * indemnity. * * * Under the old law the rejection of a lease by a trustee in bankruptcy was not a breach of the lease, in the absence of a specific agreement that it should be so.* The bankrupt tenant remained liable for the rent as it fell due but all the assets wherewith he might pay were taken from him. For a default in payment subsequent to adjudication the landlord might reenter and terminate the lease. By virtue of a covenant so providing the landlord might treat the bankruptcy as cause for reentry and termination of the leasehold estate. While, therefore, the rejection of a lease by a trustee in bankruptcy might, and usually did, spell possible or probable injury to the landlord, that fact gave him no standing as a creditor in the bankruptcy proceeding. *Having in mind this state of affairs the purpose is clearly to give a landlord a provable claim for injury due to the rejection of his lease, whether the instrument contains a covenant of indemnity or not."* (Italics added.)

And see F. & W. Grand Five-Ten and Twenty-five Cent Stores (C.C.A.2, 1935) 74 F.(2d) 654.

To overcome these difficulties, intensified by the depression, the Congress in 1934 amended section 63a of the Bankruptcy Act (11 U.S.C.A. § 103(a) by adding to the group of provable claims:

"(7) Claims for damages respecting executory contracts including future rents whether the bankrupt be an individual or a corporation, but the claim of a landlord for injury resulting from the rejection by the trustee of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises plus an amount equal to the unpaid rent accrued up to said date: Provided, That the court shall scrutinize the circumstances of an assignment of future rent claims and the amount of the consideration paid for such assignment in determining the amount of damages allowed assignee hereinunder:

Provided further, That the provisions of this clause (7) shall apply to estates pending at the time of the enactment of this amendatory Act."

■ The effect of the amendment was to allow proof of claims for damages for the rejection of a lease by the trustee or for damages or indemnity under a covenant in such lease in an amount not exceeding the rental for the year succeeding the date of the surrender of the premises, together with an amount equal to the unpaid rent accrued up to the date of the surrender. In re Owl Drug Co. (D.C.Nev.1935) 12 F.Supp. 447, 30 A.B.R.(N.S.) 705. Thus the object of the section was to change an unliquidated claim into a limited provable liquidated claim. The claim so allowed is, in effect, one for damages for the termination of the leasehold.

*"The provision, however, creates no new claim. It merely treats the adjudication as a breach of covenant and gives a provable claim in virtue of the breach."* City Bank Farmers Trust Co. v. Irving Trust Co., supra, 299 U.S. 433, at page 440, 57 S.Ct. 292, 295, 81 L.Ed. 324. (Italics added.)

■ Bankruptcy, now, terminates the relation of landlord and tenant. 2 Remington on Bankruptcy (4th Ed.1924) § 795, 1937 Supp., pages 60, 61, 63. And the right to this limited claim flows from this termination. As said in City Bank Farmers Trust Company v. Irving Trust Company, supra, 299 U.S. 433, at pages 443, 444, 57 S.Ct. 292, 297, 81 L.Ed. 324, in interpreting the somewhat similar provision contained in section 77B of the Bankruptcy Act (11 U.S.C.A. § 207):

■■ *"We think it clear that provability of such a claim is unaffected by any termination of the leasehold subsequent to rejection of the lease.* The provision is that the landlord's claim for injury resulting from rejection, or for damages, or for indemnity under a covenant, shall be limited to an amount not exceeding the rent reserved 'for the three years next succeeding the date of surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after the filing of the petition,' * * * Plainly the word 're-entry' is used to describe a case where the landlord, treating the bankruptcy as a breach of the lease, re-enters for condition broken. * * * If the landlord must give credit for the present rental value of the premises he is entitled to avail himself of them for realization of that value, and this he cannot do without re-entry and reletting. If he must give such credit he surely has the option to attempt recoupment of his loss by occupying the premises for the remainder of the term. But such occupation, under the law of most of the states, amounts to a complete termination of the leasehold and deprives the landlord of any further rights as lessor. *It is evident that if a lease be rejected the subsequent repossession of the demised premises, and acts of control and dominion do not destroy the provability of a claim under section 77B."* (Italics added.)

Under section 77B the right begins, for the purpose of computing the damages, upon repudiation or re-entry. Under 63a (7), 11 U.S.C.A. § 103(a) (7), it begins, for a similar purpose, upon rejection by the trustee or surrender of the premises.

The lease under consideration contained a termination and re-entry clause, which read: "The lessee agrees that if at any time during the term of this lease * * * the lessee, his heirs, representatives, successors, or assigns, shall be adjudicated a bankrupt, then the lessor shall have the right, at lessor's option, to immediately terminate this lease, to re-enter the said premises and remove all persons therefrom."

Bankruptcy would not, under this provision, and under the old law, work an automatic forfeiture of the lease. Forfeiture would be optional with the lessor. See Schneider v. Springmann (C.C.A.6, 1928) 25 F.(2d) 255; In re Ells (D.C.Mass. 1900) 98 F. 967, 3 A.B.R. 564. And see Murray Realty Co. v. Regal Shoe Company (1934) 265 N.Y. 332, 193 N.E. 164, 27 A.B.R.(N.S.) 144.

■ The exercise of the option to re-enter did not jeopard any of the rights of the landlord. Re-entry or surrender of the premises is merely the starting date for the computation of the maximum damages for which a claim might be allowed. And the aim of such claim for damages for the anticipatory breach is *"to discharge the debtor from liability to future suits based upon the lease."* Kuehner v. Irving Trust Co. (1937) 299 U.S. 445, 454, 57 S.Ct. 298, 302, 81 L.Ed. 340.

These considerations of the background and aims of the 1934 amendment, and of

the difficulties it sought to overcome, gives us the answer to the problem before us.

The receiver and trustee occupied the premises from the date of adjudication, January 12, 1936, until March 11, 1937. The landlord terminated the lease on the 24th of February, 1937. The referee was of the view that, under the amendment, termination was necessary and there was no liability for rent prior to that date.

■■■ I cannot follow him in this. The right of the landlord to receive the reasonable value of the occupancy by the trustee does not flow from the relationship of landlord and tenant. It flows from occupancy [In re Mullings Clothing Company (D.C. Conn.1916) 230 F. 681], although, as the authorities already cited show, the rent reserved in the lease is the measure. The trustee is not compelled to occupy the premises. When he does so, he becomes liable. The debt so created arises *subsequent* to bankruptcy. It is *unrelated* to any of the rights of the landlord under the lease. See Gate City Clay Co. v. Dickey (C.C.A.8, 1930) 39 F.(2d) 581. The amendment did not change the situation. It did not purpose to deprive the landlord of any right which he had. It sought to give him additional rights. Before the 1934 change, re-entry was necessary to end the lease. Petition of Colburn, supra. Rents accrued up to the bankruptcy were provable claims. And the receiver or trustee, if he occupied the premises, was liable for the rent. See In re Mullings Clothing Company, supra; In re Millard's, Inc. (C.C.A.7, 1930) 41 F.(2d) 498, 16 A.B.R.(N.S.) 399. See, also, Jensen v. Sparkes (C.C.A.9, 1931) 53 F.(2d) 433, and cases cited supra. The aim of the amendment was not to deprive the landlord of these rights, but to enlarge his rights against the debtor, while, at the same time, releasing the debtor from future liability. Under it, the relation of landlord and tenant is automatically terminated upon adjudication. *The landlord gets back his property.* See Kuehner v. Irving Trust Co., supra, 299 U.S. 445, at page 455, 57 S.Ct. 298, 303, 81 L.Ed. 340. Repossession under a clause in this lease does not affect the limited claim created by the 1934 amendment. Nor is it a condition precedent to its assertion. If it were so, the benefit of the claim might be rendered illusory. It is obvious that it was the intent of the Congress to give to landlords an absolute right to damages accruing to them through the rejection of the lease, the claim being limited, however, to a year's rental. See Cincinnati Underwriters Agency Co. v. Emery Memorial (C.C.A.6, 1937) 88 F.(2d) 506, 33 A.B.R.(N.S.) 663. The right is independent of re-entry or reletting. Said the court in Irving Trust Company v. Green Brothers Realty Company (C.C.A.2, 1937) 87 F.(2d) 713, 714:

"It is unnecessary to consider the dispute as to the state law because the recent amendment to section 63a (7), 11 U.S.C.A. § 103(a) (7) has made provable 'the claim of a landlord for injury resulting from the rejection by the trustee of an unexpired lease of real estate,' notwithstanding his re-entry and reletting. City Bank Farmers Trust Co. v. Irving Trust Co., Trustee [299 U.S. 433] 57 S.Ct. 292, 81 L.Ed. 324, handed down by the Supreme Court on January 4, 1937. It is true this had to do with a claim in a reorganization proceeding, not in strict bankruptcy, as here; but the distinction is immaterial. Section 63a (7) like 77B (10), 11 U.S.C.A. § 207(b) (10), means that upon rejection of the lease, the landlord may still prove his claim, *regardless of whether, under the state law, repossession and reletting terminated the lease.* * * * All the considerations emphasized by Mr. Justice Roberts as evidencing the intention of Congress to mitigate the rigors of existing law by giving the landlord a claim limited in amount and discharging the tenant from further liability are as applicable to strict bankruptcy as to reorganization proceedings, and obviously the relief was made available in pending estates in which the time to file proof of claims had not expired." (Italics added.)

And see In re United Cigar Stores Co. (Taft v. Irving Trust Company) (C.C.A. 2, 1937) 89 F.(2d) 3, 33 A.B.R.(N.S.) 600. At best, the landlord's right to damages is but a claim which, like other claims, must undergo all the vicissitudes that might befall it in the process of administration. It is but a hope of sharing in the estate by way of a dividend, if any there be.

■■■ There is no duty to repossess. And if the landlord were deprived of the right to receive rents from the trustee, while he is occupying the premises, unless he exercised the right to repossess the property, we would be asking the landlord to surrender a benefit to which he is entitled, through the occupancy by the trustee

*of his property,* for an illusory claim which may never have much, if any, cash value. If, as the cases cited hold plainly, his claim under 63a (7) is not affected by repossession, we should not compel him to repossess under penalty of losing the right to receive from the trustee, who occupies his property, a reasonable rent.

It is neither good law nor good ethics to confer upon a person, be he even a trustee in bankruptcy, a gratuity at the expense of another.

"Sue for a debt he never did contract,
And cannot answer, Ah! the sorry trade!"

The trustee here having occupied the premises, both as receiver and trustee, was liable for the rent. However, his liability extended only from February 1 to March 11, 1937.

The lease called for the payment of rent on the first of each and every month. On January 1, therefore, a provable claim in bankruptcy for the January rent existed. No liability of the trustee could flow from it. See Remington on Bankruptcy (4th Ed.) (1924) § 1226; In re Celian (D.C.Pa. 1930) 41 F.(2d) 560. And see In re Budd (C.C.A.2, 1917) 239 F. 307, 308. California does not allow apportionment of rent. And in Re Owl Drug Company (D.C.Nev.1935) 12 F.Supp. 446, 30 A.B.R. (N.S.) 709, I held that where the adjudication was made on the 10th day of the month, the landlord was entitled to have allowed as a claim, the whole month's rent—which, however, in that case, was reduced by a sum which the landlord received from the trustee under an arrangement calling for a smaller rental during his occupancy. See Re Newark Shoe Stores, Inc. (D.C.Md.1933) 2 F.Supp. 384; In re Sherwoods, Inc. (C.C.A.2, 1913) 210 F. 754, Ann.Cas.1916A, 940.

During the month of January, the trustee had the right to occupy the premises as the debtor, *absent the bankruptcy,* would have had, unless deprived of possession, after proper proceedings, for non-payment of rent.

On February 1, however, the trustee became liable for rent until he surrendered the premises.

The Referee finds $250.00 per month to be a reasonable rental. The landlords were, therefore, entitled to have allowed, as an administrative expense, the sum of $338.71, being $250.00 for the whole month of February and $88.71 for the eleven days in March.

The facts not being in dispute, it is not necessary that the decision be reversed and the matter be sent back to the referee. His decision will be modified by increasing the amount he allowed to the larger amount.

Findings and order accordingly.