In the Matter of NORTH ATLANTIC AND GULF STEAMSHIP COMPANY, Incorporated, (a New York Corporation), Debtor.

United States District Court
S. D. New York.
August 22, 1958.

Bergerman & Hourwich, New York City, for trustee, Milton M. Bergerman, and William Baranoff, New York City, of counsel.

Goodman & Mabel, New York City, for 120 Wall Associates, Michael M. Kirsch, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This proceeding for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was commenced on May 23, 1958 by the filing of an involuntary petition. On June 19, 1958 the petition was approved by the court, and Edward Schilling was appointed trustee of the debtor.

The petitioner, 120 Wall Associates, is the owner of the premises 120 Wall Street, New York City. The debtor occupied the twenty-seventh floor and part of the second floor of these premises under a lease entered into on February 27, 1956. Pursuant to an order of this court, dated July 31, 1958, the trustee has elected to disaffirm the lease.

This petition asks the court for an order directing the trustee to pay petitioner a reasonable rent for the use and occupancy of the leased premises from May 23, 1958, the date of filing of the involuntary petition, to the present, and to pay also for electric current supplied by the petitioner during that period.

The trustee denies that he ever occupied the twenty-seventh floor space, and, while acknowledging his liability for the reasonable value of his use and occupancy of the second floor space, contends that such liability did not accrue until July 1, 1958, the first day of the month following his appointment as trustee. He contends that the debtor had surrendered its space on the twenty-seventh floor to the landlord prior to the commencement of the reorganization proceedings, that there was no use and occupancy of the twenty-seventh floor by the trustee, and that the several articles of furniture which admittedly remained on the twenty-seventh floor until their removal by the trustee on July 10, 1958, did not constitute use and occupancy of that space.

There is also a dispute as to the reasonable rental value of the second floor space which the trustee claims to be $15,000 per year and the petitioner $19,000.

■ 1. Did the debtor surrender the twenty-seventh floor space to the landlord prior to the commencement of the reorganization proceedings?

The uncontroverted testimony of Robert D. Murdock, vice-president of the petitioner, negatives any surrender or acceptance of a surrender between the debtor and the landlord. He testified that the tenant communicated its desire to terminate its occupancy of the twenty-seventh floor, but that the landlord informed the debtor that it still considered the debtor to be bound by the terms of the lease.

Furthermore, paragraph 24 of the lease provides that

"No act or thing done by Landlord or Landlord's agents during the term hereby demised * * * shall be deemed an acceptance of a surrender of said premises, and no agreement to accept such surrender shall be valid unless in writing signed by the Landlord."

Since there is no claim that a written acceptance of a surrender was ever executed and signed by the landlord, as required by paragraph 24, it is plain that there was never a surrender of the twenty-seventh floor premises by the debtor.

2. Is the trustee liable for the use and occupancy of the twenty-seventh floor space because several articles of furniture left there by the debtor were not removed by the trustee until July 10, 1958?

The criteria for determining the trustee's liability for use and occupancy of premises formerly held by the debtor are as follows (Remington on Bankruptcy, 5th Ed., Vol. 6, Section 2653, pp. 189–190):

"The owner of the property is entitled to payment for use and occupation thereof by a bankruptcy receiver or trustee, as in other cases, if the use was for the benefit of the estate, though not otherwise, and perhaps not unless he first demands surrender of the premises or reaches a rental agreement with the receiver or trustee. He must substantiate his demand, or the receiver or trustee must do so for him, assuming the burden, as he is not entitled to compensation as an expense-priority item on the mere basis of semblance of continuance of occupation under a financially shattered lease because of the non-removal of a few dreary assets."

The few pieces of furniture, dreary or not, which remained on the twenty-seventh floor after the appointment of the trustee did not constitute use and occupancy of the premises by the trustee. Crook v. Zorn, 5 Cir., 100 F.2d 792, certiorari denied 307 U.S. 630, 59 S.Ct. 833, 83 L.Ed. 1513; Reynolds v. Hourigan, 3 Cir., 254 F. 690.

Such "occupancy" must be for the benefit of the estate and must be a necessary expense of administration of the estate. Crook v. Zorn, supra; In re United Cigar Stores Co. of America, 2 Cir., 69 F.2d 513.

Here it is clear that the trustee's operations were conducted solely from the second floor space. The estate derived no real benefit from having these pieces of furniture on the twenty-seventh floor. Indeed, when the landlord requested that the furniture be removed, the trustee promptly complied. Under these circumstances the trustee will not be deemed to have used or occupied the twenty-seventh floor space, nor is he liable for its rental value. See In re United Cigar Stores Co. of America, supra; In re J. Frank Stanton Co., D.C.D.Conn., 162 F. 169; In re McCrory Stores Corporation, 2 Cir., 69 F.2d 517.

3. From what date does the trustee's liability for use and occupancy of the second floor space run?

It has been clear since the enactment of Section 111 of Chapter X in 1938, 11 U.S.C.A. § 511,[1] that "the date of filing

---

1. Section 111 provides:
"Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located."

the reorganization petition is the date of cleavage for Chapter X purposes", though prior thereto the law was unsettled. Collier on Bankruptcy (14th ed.) Vol. 6, § 3.04.

In Matter of Cuyahoga Finance Co., 6 Cir., 136 F.2d 18, 20, it was said:

" * * * It is settled law that upon the filing of a petition under chapter 10 of the Bankruptcy Act, all property in which the debtor has, or may claim, an interest passes under the control of the Bankruptcy Court, and upon approval of the petition, title vests in the trustee or the debtor in possession as of the date of the filing of the petition. * * * "

Even prior to the enactment of Chapter X it had been held in In re Chase Commissary Corporation, D.C.S.D.N.Y., 11 F.Supp. 288, that in a § 77(b) proceeding the estate is chargeable for the reasonable value of the use and occupation of premises dating back to the commencement of the reorganization proceeding. The proceeding was held to have commenced at the date of the filing of the petition and not at the date of the appointment of the trustee. See, also, In re Peer Manor Bldg. Corp., 7 Cir., 153 F.2d 802, certiorari denied sub-nom Witter v. Nikolas, 329 U.S. 715, 67 S. Ct. 46, 91 L.Ed. 621; Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243; May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870.

The cases cited by the trustee in support of his contention that his liability for the reasonable value of use and occupancy of the premises did not accrue until the date of his appointment are readily distinguishable. In In re Benguiat, D.C.S.D.Cal., 20 F.Supp. 504, the filing of the voluntary petition, the adjudication, and the receiver's possession all occurred on the same day, and the question plainly never arose. All of the other cases which he cites arose prior to the 1934 amendment to Section 63, sub. a, of the Bankruptcy Act, 11 U.S. C.A. § 103, sub. a, which materially changed the lessor's position in a bankruptcy proceeding. Moreover, In re Criblier, D.C.D.Conn., 184 F. 338, and In re Benson & Kimler, Inc., D.C.E.D.N.Y., 25 F.2d 756, are distinguishable on their facts. Petition of Colburn, 1 Cir., 16 F.2d 780, is predicated on the legal consequences flowing from the position of the lessor vis-a-vis the bankruptcy proceedings prior to the 1934 amendment and has no application here.

The second floor space was used and occupied by the debtor in its business from the date of the filing of the involuntary petition up to the time of the appointment of the trustee. Upon the approval of the petition this court's custody of the assets and property of the bankrupt related back to the time of the filing of the petition and thus the property was in custodia legis during that period. The trustee's liability runs from the date of the filing of the petition.

A further question as to the date when the trustee's liability commenced, arises out of the fact that the lease required the payment of rent on the first day of every month, the debtor's obligation to pay rent for the month of May accrued on May 1st, the lessor has a provable claim for this liability, and the petition was not filed until May 23. There are cases holding that, under these circumstances, the trustee's liability does not commence until the first of the following month. See In re Benguiat, D.C.S.D. Cal., 20 F.Supp. 504; In re Celian, D.C. E.D.Pa., 41 F.2d 560, and In re Jay & Dee Stores Co., D.C.E.D.Pa., 37 F.Supp. 989.

However, I agree with Collier that "The better view * * * looks with disfavor upon this kind of sponging on the landlord and requires payment as cost of administration of the pro rata rent due for the time of occupancy by the court's officer". Collier on Bankruptcy (14th ed.) Vol. 3, p. 1507. I will therefore follow In re Youdelman-Walsh Foundry Co., D.C.E.D.N.Y., 166 F. 381, and Matter of Preisler, 7 Cir., 13 F.2d 116, and hold that the trustee's liability commences on an apportioned basis on May 23, 1958, the date of filing the pe-

tition. Cf. Heineman Corporation v. Nat Levy & Co., 2 Cir., 6 F.2d 970.

4. What is the reasonable value of the use and occupancy of the second floor space?

The lease under which the debtor occupied the second and twenty-seventh floor space provided for a yearly rental of $47,000, payable in equal monthly instalments of $3,916.67.

The lease was unitary and there was no breakdown of rentals between the two floors. The accepted standard for determining the reasonable value of the use and occupancy of premises by a trustee is the rent reserved in the lease in the absence of a clear showing that it is unreasonable. In re Sherwoods, Inc., 2 Cir., 210 F. 754, 757. Here it is conceded that the reasonable value of the twenty-seventh floor space is greater than that of the second floor space. Therefore the application of the proportionate share of the rent to the second floor space on a rent per square footage basis ($3.88 per square foot) would not be a fair measure of what the lease provides. The trustee asks the court to fix the fair rental value at $1,250 per month. He reaches this figure by reference to a 1955 agreement between the debtor and the lessor which preceded the lease and which fixed $15,000 per year, or $1,250 monthly, as the rental for the second floor space pending the execution of the present lease covering both floors.

The petitioner, on the other hand, asserts that the reasonable value of the second floor space is $19,000 per year, or $1,583.33 per month. It relies on the uncontroverted expert testimony of its vice president, whose qualifications were conceded by the trustee, that in his opinion this was the reasonable value of the premises.

I do not think that either figure should be accepted since the question can be resolved by an analysis of the proportionate amount of the rent reserved in the lease which is allocable to the second floor space. The space on the twenty-seventh floor consists of roughly 7,350 square feet net. The second floor space is 4,750 square feet net. The petitioner's expert, Murdock, testified that the value of the twenty-seventh floor space was 10% to 20% higher than that of the second floor space. Using the 10% figure most favorable to the landlord as the difference in the rental values of the two floors per square foot, and calculating the rent per square foot for the second floor under the present lease on the basis of this differential, it appears that the rental per square foot of the second floor under the terms of the lease would be approximately $3.66 per square foot. This would work out to a total rental on the second floor of roughly $17,400 per year, or $1,450 per month. I hold that this figure represents the present fair rental value for the use and occupancy by the trustees of the second floor space.

The trustee will be liable for rental at this rate from May 23, 1958, as well as for the electric current supplied by the lessor from that date and is directed to make payment therefor to the petitioner.

Settle order on notice.