**In the Matter of BUTTONWOOD SECURITIES, INC., a California corporation, Debtor.**

**Civ. A. No. 71-391-N.**

United States District Court,
S. D. California.

Oct. 10, 1972.

---

Robert B. Wessling, Robert E. Currie, Michael S. Lurey, Latham & Watkins, Los Angeles, Cal., for trustee Edwin M. Lamb, of Arthur Young & Co.

James J. Biggins, Jr., Smith, Biggins & Bollman, San Diego, Cal., for Imperial Savings & Loan Assn. of the South.

## ORDER

NIELSEN, District Judge.

The instant matter involves a claim for rent by a lessor, Imperial Savings & Loan Association of the South [Imperial], against the estate of a bankrupt lessee, Buttonwood Securities, Inc. [Buttonwood]. This claim came on for hearing before this court in the regular course of proceedings under the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa et seq. [the "SIPC Act"].

On February 4, 1969, Buttonwood, as lessee, and Imperial Savings and Loan, as lessor, entered into an Office Lease for the premises located at 7877 Ivanhoe Avenue, La Jolla, California, the lease to run up to and including February 29, 1972, with rent payable on the first day of each month. Buttonwood, however, ran into grave financial difficulty, and on September 8, 1971, filed a Petition for an Arrangement under Chapter XI of the Bankruptcy Act. At that time the Referee in Bankruptcy appointed a Receiver, who proceeded to occupy the leased premises from September 8 until October 18, 1971.

By that date the present action under the SIPC Act had been instituted, superseding the earlier proceeding in bankruptcy, and the Trustee appointed by the court under 15 U.S.C. § 78eee(b)(3) occupied the premises from October 18, 1971, through and including October 29, 1971. From October 30, 1971, through and including December 8, 1971, portions of the above-described premises were used by the Trustee for storage of property belonging to the debtor. By letter dated December 8, 1971, the Trustee notified the claimant Imperial that it was vacating the premises completely.

Based on the foregoing, Imperial has made claims for rental due and payable under the lease. What concerns this court is the claim for the period from September 8, 1971, to December 8, 1971, for which Imperial contends it is entitled to priority payment pursuant to § 64(a)(1) of the Bankruptcy Act, 11 U. S.C. § 104(a)(1).

Section 64(a)(1) provides in pertinent part:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; . . . ."

Additionally, Section 6(c)(2)(B)(ii) of the SIPC Act, 15 U.S.C. § 78fff(c)(2)(B)(ii), provides that where necessary the Securities Investor Protection Corporation will advance funds for the payment of certain costs and expenses specified for priority in clauses (1) and (2) of Section 64(a) of the Bankruptcy Act. Landlords are also accorded some recourse under Section 63(a)(9), which provides for proof of debts allowable against the estate. However, since in these proceedings counsel for the

Trustee has concluded that there will be no funds available for the payment of any dividend to creditors other than those entitled to 64(a)(1) and (2) priority and broker creditors protected by Section 6(d) of the SIPC Act, Imperial will be paid only that which is determined to be rent incurred in the actual administration of the bankrupt's estate.

It is not disputed that Imperial is entitled to this administrative rent priority for the period October 1, 1971, through December 8, 1971. As to the rent due for the period September 8, 1971, to September 30, 1971, it is the Trustee's position that the Section 64(a)(1) priority does not apply. For such a view he relies on the case of In re Benguiat, 20 F.Supp. 504 (S.D. Cal., Central Div. 1937), which sets forth the rule that the obligation of a trustee in bankruptcy for administrative rent does not arise prior to the first date that rent is payable following the filing of the bankruptcy petition, in this case October 1, 1971. The rationale for such a rule would be that, as of the rental due date prior to the bankruptcy proceedings, the bankrupt's right to possession of the premises arises for the entire month, as does the landlord's claim for rent, provable in the bankruptcy proceedings under § 63(a)(9), 11 U.S.C. § 103(a)(9). The receiver in bankruptcy is seen as succeeding to the right of possession which has already "vested" in the bankrupt for that month, rent being nonapportionable, and there is therefore no requirement to pay administrative rent until the first rent payment date following bankruptcy.

Claimant Imperial, naturally, opposes this view of the applicable law, and urges this court not to follow *Benguiat*. There is a dearth of reported opinion on this point arising out of this circuit. While it is quite true that *Benguiat* has never been overruled, neither has it been expressly followed to any great extent.[1]

---

1. *Benguiat* appears to have been followed in In re Jay-Norm Corporation, 174 F. Supp. 866 (S.D.Cal.Cent.Div.1958). However, the award of administrative rent in that case turned on the factual question of whether or not the landlord had terminated the lease prior to bankruptcy, rather than on the legal sufficiency of the *Benguiat* rule, which was not at issue. Such is not the case here.

This court, mindful of the frequency with which the question arises in bankruptcy proceedings, feels that after some thrity-five years, the *Benguiat* rule merits re-examination.

*Benguiat*, as the able counsel for the Trustee points out, is not an aberration in the law of bankruptcy. Rather, this rule has been followed in the Eastern District of Pennsylvania since 1930. See In re Celian, 41 F.2d 560 (E.D. Pa. 1930); In re Jay & Dee Store Co., 37 F.Supp. 989 (E.D. Pa. 1941). In fact as recently as February 29, 1972, a Referee in Bankruptcy in that district held that a landlord's claim for a month's rent was not entitled to priority as an administrative expense even though the premises were operated by a receiver for most of the month. See In re Sylvan Dress Co., Inc., noted in CCH Bankruptcy Reporter, ¶64,389 (E.D.Pa. 1972).

While this principle obviously remains viable in Pennsylvania and, no doubt, in those courts in California which feel themselves bound by *Benguiat*, I cannot fail to note the controversy engendered by the rule and the disapproving eye cast upon it by other courts as well as experts in the field of bankruptcy.[2]

As in many other areas of corporate law, most of the cases which decide this particular question have come from the courts of the Second Circuit. As early as 1909 the Eastern District of New York considered both arguments and concluded that "[I]f the receiver is actually in possession, for the purpose of preserving the estate, during a certain number of days, he should pay, as part of the expenses of maintaining the estate, the pro rata rent, at a reasonable value, for that time, . . . ." In re Youdelman-Walsh Foundry Co., 166 F. 381, 382 (E.D.N.Y. 1909). This rule was confirmed by the Second Circuit Court of Appeals in In re Sherwoods, Inc., 210 F. 754 (1913).

In a 1923 case, In re Manhattan Piggly-Wiggly Corporation, 296 F. 944 (S.D. N.Y. 1923), then District Judge Learned Hand ruled in a seemingly contrary manner, holding that where a receiver took possession of a bankrupt lessee's premises, possession of the lease, a chattel real, passed to the receiver like the possession of any other chattel. This was considered by the Second Circuit in Oscar Heineman Corporation v. Nat Levy & Co., 6 F.2d 970 (1925), and rejected as being contrary to the holding in *In re Sherwoods*. Rather, the appeals court stated:

"We are convinced, both upon principle and authority, that where a . . . receiver goes into possession of premises without adopting the lease, for the time being excluding therefrom the lessor and the lessee, the lessor has an equitable claim to be compensated out of the funds in the receiver's hands for the use and occupation of the premises. This claim the court in the exercise of its equity powers will protect, and direct to be paid along with the other expenses of administration." 6 F.2d 970, 975.

While the Second Circuit in *Heineman* had been careful to distinguish *Manhattan Piggly-Wiggly* rather than overrule it expressly, the effect was the same nonetheless. This was clearly demonstrated in the 1937 case of Central Manhattan Properties v. D. A. Schulte, Inc., 91 F.2d 728 (2nd Cir. 1937), wherein Judge Hand, now sitting on the Court of Appeals, wrote the following:

"In Re Manhattan Piggly-Wiggly Corp. (D.C.) 296 F. 944, I held that

2. The view put forth by the Trustee is criticized in Collier on Bankruptcy, 14th Ed., Vol. 3A, ¶ 62.14, p. 1515, which states:

"The better view, however, looks with disfavor upon this kind of sponging on the landlord and requires payment as cost of administration of the *pro rata* rent due for the time of occupancy by the court's officer."

the bankrupt and its receiver are entitled to possession gratis, until the lessor at least asks the court to be relieved of the stay, and that if he does not, he cannot recover for use and occupation; . . . But this court overruled that decision in Oscar Heineman Corp. v. Nat Levy & Co., 6 F.2d 970, . . . where we held that a chancery receiver was liable for use and occupation from the moment of his entry, regardless of the lessor's inaction." 91 F.2d 728, 730.

It may be noted that by this time some authority from other courts had been reported. The Seventh Circuit had reached the same conclusion as the Second in In re Preisler, 13 F.2d 116 (7th Cir. 1926), in which the court resolved the question with the following:

> "Bankrupt's whole estate has been taken and is being administered in bankruptcy. If the rent for the premises for the time after the petition was filed is not to be paid therefrom, we must find that a court has the power to take and use property of a third party without obligation to pay therefor . . . . The simple fact is that, under the authority and direction of the court, the premises were used, and justice and fair dealing require that the owner shall receive what the use was reasonably worth . . . ." 13 F.2d 116, 117.

By this time, also, In re Celian, supra, in Pennsylvania as well as Benguiat in California had been decided. These contrary authorities, while recognized in later cases, had no effect on the position taken therein. Thus, in In re North Atlantic & Gulf Steamship Co., 166 F. Supp. 29 (S.D.N.Y. 1958), aff'd sub nom. Wall Associates v. Schilling, 266 F.2d 548 (2nd Cir. 1959), the court states:

> "There are cases holding that, under these circumstances, the trustee's liability does not commence until the first of the following month. See In re Benguiat, D.C.S.D. Cal., 20 F.Supp. 504; In re Celian, D.C.E.D. Pa., 41

F.2d 560, and In re Jay & Dee Stores Co., D.C.E.D. Pa., 37 F.Supp. 989.

> "However, I agree with Collier that 'The better view * * * looks with disfavor upon this kind of sponging on the landlord and requires payment as cost of administration of the pro rata rent due for the time of occupancy the court's officer.' . . . I will therefore follow In re Youdelman-Walsh Foundry Co., D.C.E.D.N. Y., 166 F. 381, and Matter of Preisler, 7 Cir., 13 F.2d 116, and hold that the trustee's liability commences on an apportioned basis on . . . the date of filing the petition." 166 F.Supp. 29, 32-33.

And again in S & W Holding Co. v. Kuriansky, 317 F.2d 666 (1963), the Second Circuit reiterated its position with persuasive force. Holding that the debtor-lessee is held liable for the accrued rent only to the date of bankruptcy while the liability of the trustee for use and occupancy arises from that date, the court expressed its feeling that "It should not lie with the trustee, who is charged with doing equity, to presume on the lessor to the extent of not paying for his use and occupancy during the first month after bankruptcy." 317 F. 2d 666, 669.

While, as indicated previously, the Second Circuit is predominant in its enunciation of the position taken by the claimant Imperial, other courts have concurred. We have already noted the agreement of the Seventh Circuit, see In re Preisler, supra. It would appear that the Fifth Circuit has likewise adopted this position, see Diversified Services, Inc. v. Harralson, 369 F.2d 93 (5th Cir. 1966). In that case the trustee's liability for administrative rent commencing on the date of bankruptcy was not disputed; the only question in issue was the appropriate amount of rental due the lessor from that date.

Thus, it is clear that the weight of authority has rejected the rule set forth in In re Benguiat. However, it may be argued, Benguiat conforms with

**278**

the principle of nonapportionment of rent, which is unquestionably the law in California. Hindin v. Caine, 104 Cal. App.2d 238, 231 P.2d 83 (1951); Harabedian v. Parnell, 96 Cal.App.2d 358, 215 P.2d 73 (1950); Title Insurance & Trust Co. v. Amalgamated Oil Co., 63 Cal.App. 29, 218 P. 71 (1923). It is quite true that at common law rent does not accrue on a day-to-day basis, but falls due in full on the agreed date without apportionment. While such a rule is generally followed in most landlord-tenant situations, other jurisdictions have modified it in bankruptcy proceedings in order to achieve a more equitable result. See S & W Holding Co. v. Kuriansky, *supra*, 317 F.2d 666 at 669. Even in California the "harsh but well settled rule" of nonapportionment has been held to be not without exceptions. Friedman v. Isenbruck, 111 Cal.App.2d 326, 244 P. 2d 718 (1952). See also California Civil Code § 1935. A review of the current law, as well as plain fairness, convinces me that the case of a bankrupt lessee should constitute one such exception.[3] It does not fit this court's concept of justice, nor of the statute's intent, to allow priority payment under § 64(a)(1) to other creditors who service the needs of bankruptcy administration while denying it to a lessor who supplies the premises indispensable to the proceedings.

 This court, therefore, finds the rule in *Benguiat* an outmoded adherence to common law principles and declines to follow it, relying instead upon those cases which hold the trustee liable for administrative rent from the date of bankruptcy. It is the conclusion of this court that administrative rent is due and payable to claimant Imperial Savings and Loan Association for the period from and including September 8, 1971, to December 8, 1971.

With regard to the amount of administrative rent to be paid, this court, having considered the evidence and argument of counsel, finds as follows: For the period September 8 through October 31, 1971, during which the premises were actually occupied first by the receiver and then by the trustee for administration of the estate, the lessor is entitled to the full rental reserved in the lease. For the period November 1 through December 8, 1971, during which the premises were used for storage purposes only, this court finds that sixty-five (65) per cent of the reserved rental is a reasonable award under the principles set forth in Crook v. Zorn, 100 F.2d 792 (5th Cir. 1939).

It is so ordered.

occupancy, a lessor could obtain a larger amount in priority administrative rent under § 64(a)(1) of the Bankruptcy Act than he could if he made a general landlord's claim for the same period under § 63(a)(9).

3. While the rule of nonapportionment has in general worked to the advantage of the lessor, landlords, should not oppose the creation of such an exception in this jurisdiction. It is clear that if the trustee of a bankrupt estate is required to pay a *pro rata* share for his use and