### OSCAR HEINEMAN CORPORATION v. NAT LEVY & CO., Inc.

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 283.

Receivers ⬤═⇒96—Liability, where receiver goes into possession of leased premises without adopting lease, stated.

Where chancery receiver goes into possession of leased premises without adopting the lease, for the time being excluding therefrom lessor and lessee, lessor has an equitable claim to be compensated, out of funds in receiver's hands, for use and occupation, the claim to be paid as part of expenses of the administration, and the amount stipulated in the lease to be accepted as the reasonable value, in the absence of a showing of its unreasonableness.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Oscar Heineman Corporation against Nat Levy & Co., Inc. Motion of the Liberty Place Holding Corporation for an order that defendant's receivers pay claim for their use and occupation of premises was denied, and claimant appeals. Reversed, with directions.

Sperry & Yankauer, of New York City (Walter D. Yankauer, of New York City, of counsel), for appellant.

Schechter & Lotsch, of New York City (David W. Kahn, of New York City, of counsel), for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This case relates to the liability of equity receivers to pay for the use and occupation of premises. It appears that on May 14, 1924, the complainant began an action against the defendant, in which action Franck C. Fisher and Nat Walkof were appointed receivers of the property of the defendant. The receivers immediately took possession of the premises occupied by the defendant, and continued in possession of such premises for a period of 41½ days. The premises were held under a lease executed by the Liberty Place Holding Corporation to the defendant, and in which the defendant agreed to pay rent in the sum of $13,000 per annum.

The receivers not having paid any rent for the use of the premises during the time of their occupation, the Liberty Place Holding Corporation, as lessor, made demand upon the receivers in the sum of $1,535.08, claiming that the sum demanded was the fair and reasonable value for the use and occupation of the premises. The receivers having refused to make payment, the Liberty Place Holding Corporation, as lessor, came into court and asked for an order directing the receivers to pay the amount of $1,535.08 as above demanded.

The receivers at no time adopted the lease. They only occupied the premises for a sufficient length of time to enable them to sell the defendant's assets. The landlord at no time took any steps to re-enter the premises, either before or after the appointment of the receivers, nor was any agreement at any time made between the landlord and the receivers respecting their occupation.

The motion having been duly heard, the court entered an order on October 17, 1924, in which the motion was in all respects denied. In denying the motion the District Judge filed the following opinion:

"While the opinion of Judge Learned Hand, in Manhattan Piggly-Wiggly Corp. (D. C.) 296 F. 944, is contrary to the apparent dictum in Re Sherwoods, 210 F. 756, 127 C. C. A. 304, Ann. Cas. 1916A, 940, as well as to what has been regarded as the general practice in this court, I find no authoritative decision against the result he reached, and it seems hard to answer theoretically. The question is whether the uniform practice has not created an arrangement implied in fact from the retention of possession by a receiver of leased premises, irrespective of whether the landlord has taken action or not; in other words, whether such retention does not indicate an agreement to pay for occupation. I will follow Manhattan Piggly-Wiggly Corp. (D. C.) 296 F. 944, without further examination of authorities, particularly those relating to assignees by the state courts, in order that the case may be reviewed as quickly as possible."

An examination of the case of In re Manhattan Piggly-Wiggly Corporation, supra, shows that the question there decided related to the payment of rent. In that case Judge Learned Hand (then a District Judge) said:

"The receiver was appointed and took possession of the assets on November 18, 1922, among which was a lease executed between the bankrupt and petitioner. The rent was payable monthly in advance, and the lease contained the usual condition of re-entry for breach of the covenant to pay rent. The bankrupt did not pay the rent falling due on November 1st, but the lessor took no steps to re-enter, either before or after the entry of the receiver, nor did he make an agreement with the latter respecting his occupation. Eventually he demanded the rent as for use and occupation, which the receiver refused as to the November rent, on the theory that, as the lessor had not demanded possession of him, he had always held in the lessee's right. Upon failure of the lessee to pay, the lessor had the right to dispossess him for breach of condition. Until he did, the lessee might enjoy possession, and the risk of loss of the rent lay with the landlord, who had nothing but the lessee's promise."

The opinion in that case, from which the above extract is taken, was a short one, and contains no reference to a single decided case. It is also to be observed that the case was one in bankruptcy. The rights and liabilities of receivers are not necessarily the same in all cases. We may, however, remark that the decision in Re Manhattan Piggly-Wiggly Corporation is contrary to what was said by this court in Re Sherwoods, Inc., 210 F. 754, 757, 127 C. C. A. 304, 307 (Ann. Cas. 1916A, 940), where this court said:

"It is well settled that, upon the bankruptcy of the tenant, provided this does not by the express terms of the lease terminate the tenancy, the leasehold interest passes to the trustee in bankruptcy, if he elects to accept it. He has a reasonable time within which the lease may be accepted. If in the meanwhile he occupies the premises, he is liable for merely the reasonable rent while so occupying, and not for the rent stipulated in the lease itself. Nevertheless the rent so stipulated should be accepted as the reasonable worth of the use and occupation, in the absence of clear showing of unreasonableness. Remington on Bankruptcy, § 2135, note 57, p. 549."

In this connection it may be said that in a District Court in North Carolina (Bray v. Cobb, 100 F. 270) and in a District Court in Kentucky (In re Jefferson, 93 F. 948) it has been held that an adjudication in bankruptcy terminates *all* contractual relations of a bankrupt, and puts an end to all personal obligations to the landlord growing out of the lease. Clark on the Law of Receivers, vol. 1, § 373, referring to the decisions of these two District Courts in North Carolina and Kentucky, and apparently approving our decision in the Sherwoods Case, says:

"However, the United States Circuit Court of Appeals for the Second Circuit and other courts have held that bankruptcy does not sever such relation, and the tenant remains liable, and that the obligation to pay rent is not discharged as to the future, unless the trustee elects to retain the lease as an asset. This latter view seems in accord with the English law."

The rule as stated by us in the Sherwoods Case is the rule laid down in Remington on Bankruptcy (3d Ed.) vol. 6, § 2659, and in Collier on Bankruptcy (13th Ed.) vol. 2, p. 1427. No decision in the bankruptcy courts has come to our notice which asserts the doctrine laid down in Re Manhattan Piggly-Wiggly, supra. But we are not dealing in the case now before the court with a receiver in bankruptcy.

A chancery receiver gets no title, but only a right to the possession of the property as the officer of the court. The title continues in those in whom it was vested when the appointment was made. The receiver takes charge of the property for the court, and while he is in charge the property is in custodia legis, and his duty is to administer it

subject to the court's direction. His possession is in reality the possession of the court. He is appointed in the interests of justice and for the benefit of all the parties in interest. As it has been frequently said, he is put into possession of the property because it is thought more for the interests of justice that the property should be in his possession than that it should be in the possession of one of the parties to the dispute. In such cases a receiver is "the right arm of the court," and after his appointment the party, from whose possession the property has been taken, has no authority thereafter to subject it to any legal liability. His appointment is for the benefit of all parties interested, and he holds for the benefit of those ultimately entitled. As he is a bare custodian, and does not represent the party having the legal title, he is not bound by the covenants, executory contracts, and leases of such party.

Since the appointment of a chancery receiver does not invest him with the title to the property, he is not, like an assignee of a term, subject to legal liability for rent by the mere fact of his appointment. But the courts have recognized the principle that, while the mere appointment of the receiver does not render him an assignee of the term, they have considered that he stands in the same position as an assignee with respect to his right to adopt the lease and become liable on its covenants, and that he may retain possession of the premises for a reasonable time to enable him to determine whether he will adopt the lease; so that, by the mere act of taking possession of leased property, he does not necessarily become bound by the covenants of the lease. See American Brake Shoe & Foundry Co. v. New York Railways Co. (C. C. A.) 282 F. 523, 528. But, if not liable on the lease, is he not chargeable for use and occupation?

In an Irish case, Balfe v. Blake, 1 Ir. Ch. 365, which involved the duty of a receiver to make certain payments to the landlord, the Lord Chancellor said: "This court is bound to act with honesty both to landlord and tenant, and, being placed in the position of tenant, to do as a just and honest tenant would do." It certainly is the duty of courts to maintain a high standard of honesty at all times and under all circumstances. And in an especial manner is it true when it takes the property of A. and puts it into the possession of its own custodian to administer. In such a case, if the court permits its representative to enter and occupy leased premises for a considerable period, whether he

adopts the lease or finally concludes to repudiate it, common honesty requires that payment shall be made, if not under the terms of the lease, then for the reasonable value of the premises during the period of his use and occupancy. And this we understand is the law.

In Hand v. Blow, [1901] Ch. D. 721, 736, the law was stated as follows:

"If you have a company or person whose estate is being dealt with or administered by the court, and a liquidator or receiver appointed by the court has occupied or used premises that are part of the estate, then, as to rent and other outgoings payable to the landlord or other parties in respect of the premises for that occupation or user, and for which the company or person whose estate is being dealt with or administered is liable, the court will see that such rent and other outgoings are paid out of the assets got in by the liquidator or receiver."

The Supreme Court, in United States Trust Co. v. Wabash Railway, 150 U. S. 287, 299, 14 S. Ct. 86, 89 [37 L. Ed. 1085], said:

"Stripped of its complications, this case involves to a certain extent the same question disposed of by this court in Quincy, Missouri & Pacific Railroad v. Humphreys, 145 U. S. 82 [12 S. Ct. 787, 36 L. Ed. 632], namely, whether the receivers of the Wabash system took possession of the leased lines under such circumstances as to charge them with the payment of the agreed rental so long as they retained possession of the lines. The general rule applicable to this class of cases is undisputed that an assignee or receiver is not bound to adopt the contracts, accept the leases, or otherwise step into the shoes of his assignor, if in his opinion it would be unprofitable or undesirable to do so, and he is entitled to a reasonable time to elect whether to adopt or repudiate such contracts. If he elect to adopt a lease, the receiver becomes vested with the title to the leasehold interest, and a privity of estate is thereby created between the lessor and the receiver, by which the latter becomes liable upon the covenant to pay rent. Sparhawk v. Yerkes, 142 U. S. 1, 13 [12 S. Ct. 104, 35 L. Ed. 915]; Sunflower Oil Co. v. Wilson, 142 U. S. 313, 322 [12 S. Ct. 235, 35 L. Ed. 1025]; Woodruff v. Erie Railway, 93 N. Y. 609; In re Otis, 101 N. Y. 580, 585 [5 N. E. 571]."

In City and County of Denver v. Stenger, 295 F. 809, 817, the Circuit Court of Appeals in the Eighth Circuit held that a chancery receiver of a public utility is the custodian for the court in charge of the prop-

erty he is administering; that during the receivership he may, under the orders of the court, adopt or renounce contracts which had been made with the owner; that he has a reasonable time after becoming receiver to determine his adoption or renunciation of them; if during this period of suspension he uses the property, he is liable for such usage; that the measure of his liability is not that prescribed by the contract, but is the value of the benefit such ad interim usage has been to the estate, not exceeding the compensation stipulated in the contract.

In Stokes v. Hoffman House, 46 App. Div. 120, 61 N. Y. S. 821, the Appellate Division of the Supreme Court of New York, First Department, the liability of a chancery receiver for the payment of rent was discussed. In that case the receiver, without having been instructed to do so by the court, had paid the rent of the hotel premises. He afterwards brought an action at law to recover the rent so paid. The court held that he was not under legal liability to pay the rent, and that, not having been directed by the court to make the payment, he had paid unlawfully and was entitled to recover it back. The case was carried to the Court of Appeals, and was there affirmed in an opinion written by Judge Cullen. 167 N. Y. 554, 60 N. E 667, 53 L. R. A. 870. The affirmance went upon the ground that the liability for the rent did not constitute a legal liability against the receiver. Judge Cullen said:

"If it be true that a chancery receiver takes no title to a leasehold estate, but mere possession as an officer of the court, we do not see how any privity of estate can be created between him and the lessor by which he can become liable as assignee of the term upon the covenant to pay rent. It is contended, however, that whatever be the force of the foregoing argument, and whatever the true character of his possession, it is settled by the decided cases that a chancery receiver is liable for the payment of rent accruing during his occupation. Before considering the cases cited in support of this assertion, it is necessary that we should have in mind the clear distinction between the legal liability of the receiver, by virtue of his appointment as such and his possession under his appointment, and the equitable claim which a lessor may have for the application of the fund in court towards the satisfaction of the rent. The first, if it exists, is absolute. The second is qualified, and may be destroyed by superior equities of other parties. It is apparent that the claim of the lessor for rent, when solely an equitable one, must be established in the action in which a receiver is appointed; for in that form alone can parties having other equities be heard, and the superiority of equities among conflicting claimants be determined."

And in concluding his opinion he said:

"We do not wish our decision to be misinterpreted. We have discussed the rights of the parties from a technical point of view, regardless of the equitable claims of the defendant, simply because we deem that it would set a very bad precedent to attempt to adjust those equities in this action, in which all the facts determining such equities are not and cannot be before us. While we have held that no legal liability for the payment of rent was imposed upon the receiver, either by virtue of his appointment and possession as such, or by the terms of the order appointing him, we have not decided that the lessors had not a most equitable claim to have all the net profits of the operation of the hotel, after the payment of its running expenses, applied to the payment of the rent of the premises, the use of which by the receiver produced the fund in court. In Matter of Otis [101 N. Y. 580, 5 N. E. 571] Judge Andrews said: 'If the leased premises are occupied by the committee, and such occupation is to the advantage of the estate, as where it was necessary in order to carry on or close up the business of the lunatic, the rent accruing during such occupation would justly be regarded as a reasonable expense incurred by the committee.'

"Nor do we decide that the defendant did not, under the terms of the sale, by which it was to receive the property free and clear of unpaid rent, succeed to the equities of the lessor, as well as acquire new equities of its own. The defendant has not been without remedy. During the pendency of this action it could have applied in the foreclosure suit for an order of the court ratifying the payment made by the receiver on account of the rent. If such a motion had been granted, it would have disposed of that claim, and no recovery for the amount could have been allowed. It is not too late for the defendant now, by application in the foreclosure suit, to have all its equities established and preserved. It may move the court for a ratification for the payment of rents made by the receiver, and for a direction to its officer to reduce the judgment by that amount and interest. If the amount of the present recovery is to be ultimately restored to the de-

fendant on account of the unpaid rent which it should have been allowed out of the purchase money, this judgment might be permitted to stand unenforced, 'as settling the accounts between the receiver and the defendant, and to be credited as a payment on such restoration. All these matters, however, are questions which can be determined only in the foreclosure action, and upon which we do not pass."

In 23 Am. & Eng. Encyc. of Law, 1099, the law, is, as we think, correctly stated as follows:

"A receiver of an individual or corporation does not, by reason of his appointment, become liable on existing contracts of lease. Where, however, a receiver adopts an existing lease of premises, he becomes ·bound thereby to pay rent according to its terms. And an adoption may, though not necessarily so, be implied by a taking possession and occupancy of the premises under order of court, unless the understanding of the parties and the order of the court are to a different effect. ·But, although there is no adoption of a lease, the receiver will be liable for a reasonable rent during his occupancy of leased premises."

And in 34 Cyc. 262, speaking of an ordinary chancery receiver, or receiver pendente lite, and after saying that his appointment does not divest the title to the property, but merely creates a custodian to preserve possession, and that therefore the receiver is not vested with the legal title, it is said:

"But it is nevertheless recognized that the court may, while not as a matter of absolute legal liability, require the receiver to pay rent during his occupancy by way of enforcing an equitable claim of the lessor for the application of a fund in court."

It has even been held that equity requires compensation to be made to a landlord, where the receiver has neither adopted the lease nor gone into actual possession of the premises under it. The Circuit Court of Appeals of the Sixth Circuit, in an opinion written by Judge Lurton and concurred in by Judge Day (both of whom later became Justices of the Supreme Court), in Dayton Hydraulic Co. v. Felsenthall, 116 F. 961, 966, 967, 54 C. C. A. 537, 542, said:

"The liability of the receivership for rentals during the time a receiver has actually used the leased premises has in general not been disputed. In such cases, the controversy has turned mainly upon whether rent should be paid according to the stipulations of the contract between lessor and lessee, or upon the basis of a reasonable compensation to the lessor. But it is said that this case is to be distinguished from all of the cases cited, because the receiver neither adopted the lease, nor agreed to pay rents for the premises, and never took any actual possession. It must be conceded that the record is barren of any facts which would authorize us to hold that the receiver has either intentionally or impliedly adopted the lease, or that he has ever expressly agreed to pay rent for the premises, or that he ever had any actual physical possession of the leasehold estate. Notwithstanding these concessions, it is entirely agreeable to the equitable principles regulating the relation of such officers to leasehold estates that, by acts and conduct not involving an actual occupation of the premises, a receiver may come under an equitable obligation to a lessor for rents accruing during the receivership. A court of equity will not suffer an injustice to be done a lessor by acts or conduct which amount equitably to an exclusion of the lessor from the premises, and an appropriation of them to the supposed benefit of the trust. * * * That the receiver was not in the actual possession of the leased premises is not necessarily conclusive against liability. He was constructively in possession, for the decree appointing him described this leasehold by reference, and directed him to take possession. More than that, all persons were enjoined from interfering with the property thus placed in his care and custody. If the lessor had, without leave of the court or consent of the receiver, intruded upon the premises by re-entering, it would have been a plain contempt of court."

In the above case the receiver was compelled to pay the rentals stipulated in the lease. And this case has been recently followed by the Circuit Court of Appeals in the Ninth Circuit, in Mathews v. Butte Machinery Co., 286 F. 801, 805. A court of equity will not allow a receiver who has had the benefit of the lease to enjoy those benefits without paying therefor—either on the basis of quantum meruit or the terms of the lease according to the circumstances of the particular case. Spencer v. Columbian Exposition, 163 Ill. 117, 45 N. E. 250; De Wolf v. Royal Trust Co., 173 Ill. 435, 50 N. E. 1049; Link Belt Machinery Co. v. Hughes, 174 Ill. 155, 51 N. E. 179; Commonwealth v. Franklin Insurance Co., 115 Mass. 278, 282; Bell v. American Protective League, 163 Mass. 558, 40 N. E. 857, 28 L. R. A. 452, 47 Am. St. Rep. 481; Stoepel v. Union Trust Co., 121

Mich. 281, 80 N. W. 13; New Hampshire Trust Co. v. Taggart, 68 N. H. 557, 44 A. 751; Savings, etc., Co. v. Rogers, 162 Wis. 216, 155 N. W. 155. And in the case of a receiver of a leased railroad, if he decides not to adopt the lease, after operating under it, he is not bound to pay rent for the trial period at the rate stipulated in the lease. But he cannot escape all liability to the lessor, but must turn over to such lessor the net earnings which the road has made while he was carrying on its .operations, as this court held in Pennsylvania Steel Co. v. New York City Ry. Co., 198 F. 721, 730, 117 C. C A. 503. And see American Brake Shoe & Foundry Co. v. New York Railways Co. (C. C. A.) 282 F. 523, 529. It would be the rankest injustice to hold that the receiver could enjoy the benefit of the lease for a period, and then, by rejecting it, escape any liability to the lessor for the benefits which had accrued thereunder.

We are not aware, in such a case as this, where a chancery receiver finally elects not to adopt a lease, that he is exempt in the court of his appointment from liability to compensate the lessor for use and occupation during the period of his occupancy. In High on Receivers (4th Ed.) 325, it is said:

"Where, however, the receiver has renounced the lease, and has elected not to be bound by the obligations thereof, there is a direct conflict of authority as to whether he becomes liable for the rent during the period of his occupancy at the rate stipulated in the lease, or only for the reasonable rental value."

A receiver, when he is appointed and qualifies, comes under the sole direction of the court, and his engagements are those of the court, and the liabilities he incurs are chargeable upon the property which he administers, and which is under the control of the court; and common honesty requires the court, having assumed the administration of the property, to see that the just expenses of administration are paid.

We are convinced, both upon principle and authority, that where a chancery receiver goes into possession of premises without adopting the lease, for the time being excluding therefrom the lessor and the lessee, the lessor has an equitable claim to be compensated out of the funds in the receiver's hands for the use and occupation of the premises. This claim the court in the exercise of its equity powers will protect, and direct to be paid along with the other expenses of administration. In the absence of any evidence showing the unreasonableness of the amount of the rent stipulated in the lease itself, the amount so stipulated is accepted as the reasonable value of the use and occupation of the premises during the period of the receiver's occupancy, although he has not adopted the lease.

The complainant moved in the court below that the receivers be directed to pay to it the sum of $1,535.08 as the fair and reasonable value for the use and occupation of the premises. This motion was supported by the complainant's affidavit, in which it was stated that the amount of the claim was the fair and reasonable value for the use and occupation; and it appears that this is the proportionate share of the rent, as fixed by the lease, for the period the receivers were in possession. The receivers have not denied or questioned the reasonableness of the rental value as alleged, and have been content simply to deny any liability whatever.

The order of the court below must be reversed, and the District Court is instructed to enter an order directing the receivers to pay to the appellant the sum of $1,535.08, with interest.