### In the Matter of UNIVERSAL MEDICAL SERVICES, INC., Bankrupt.
### No. 70–456.

United States District Court,
E. D. Pennsylvania.

April 27, 1973.

See also, 3 Cir., 460 F.2d 524.

Allen W. Stewart, Alan L. Reed, Morgan Lewis & Bockius, Philadelphia, Pa., for King of Prussia Park Trust.

Marvin Krasny, Adelman & Lavine, Philadelphia, Pa., for trustee in bankruptcy, Irving H. Kutcher.

HIGGINBOTHAM, District Judge.

### OPINION

#### I. Introduction

This matter is before the Court on a certificate for review of a Bankruptcy Judge's order [1] relegating a portion of

---

1. Section 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c), authorizes a review of any order of a Bankruptcy Judge.

the landlord's claim to a fifth priority status in accordance with Section 64(a)(5) of the Bankruptcy Act, 11 U.S.C. § 104(a)(5) and denying the landlord's request that the particular claim be allowed in full and accorded a first priority standing pursuant to Section 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1).[2] Specifically, the question presented is whether a receiver, who is appointed in a Chapter XI proceeding, should be required to pay the landlord as a cost of administration the fair rental value of the premises used and occupied by him effective as of the initial date of such use and occupancy? More succinctly worded, or at least, phrased differently, should the receiver be liable as an administration expense for his *pro rata* share of the rent when his appointment and occupancy commenced on the fifth day of the month but the rent was due and payable in monthly installments on the first day of each month?

In seeking this review, the claimant-landlord asks this Court to reconsider the decision of In re Celian, 41 F.2d 560 (E.D.Pa.1930) which, while not only being the law of this district and circuit for over forty years, was authored by Judge William H. Kirkpatrick, a distinguished jurist for whom I, as well as my other colleagues on this Court, have always regarded with the highest esteem and utmost respect.

Though *Celian* is endowed with the vintage of forty-three years of precedent, nevertheless it has neither been cited by nor received the imprimatur of the Court of Appeals of this Circuit. Thus, because of its vintage, having been authored by Judge Kirkpatrick, I feel compelled to respect it, but not required to follow it. In fact, from today's increasing concern of equity, justice and fair play, I reject *Celian*. I find the "anti-*Celian*" cases more persuasive and adopt them. The receiver here does not speak with the voice of equity or fair play. After having used the landlord's premises to preserve the estate, the receiver must pay his "dues". I hold that he is liable to the landlord for the reasonable and fair value of the premises he used.

In some ways, it would be an injustice to the stature of the late Judge Kirkpatrick to perpetuate this precedent simply because he was one of the most revered judges in the nation. For even great judges can not always speak for eternity on all issues. For reasons hereinafter set forth, I decline to follow In re Celian.

## II.   Background [3]

On August 5, 1970, Universal Medical Services, Inc. [hereinafter referred to as the "Bankrupt" or "Universal"] filed a Petition for an Arrangement under Chapter XI of the Bankruptcy Act and thereafter, having failed to file a Plan of Arrangement, was adjudicated a bankrupt on October 20, 1970. At the time of the filing of the Chapter XI Pe-

---

2. Section 64(a) of the Bankruptcy Act, 11 U.S.C. § 104(a), provides in relevant part:
   "Debts which have priority
   (a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition . . . ; and (5) debts other than for taxes owing to any person, including the United States, who by the laws of the United States is entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law or who is entitled to priority by paragraph (2) of subdivision c of section 107 of this title: *Provided, however,* That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy."

3. The parties have stipulated there are no facts in dispute, with the only question raised in the instant action being purely a legal one, that is, the status today of In re Celian in this district and circuit.

tition on August 5th a receiver, Irving H. Kutcher, who was appointed to preserve the estate, entered into the premises then being leased by the bankrupt and occupied same until December 17, 1970. When the order of adjudication declaring Universal to be a bankrupt was issued on October 20th, the receiver then became the trustee in bankruptcy.

On August 5th, Universal was the lessee of the premises owned by the Trustees of King of Prussia Park Trust (hereinafter referred to as the "Landlord" or "Lessor") under a lease agreement dated April 1, 1970. The lease provided for a term of ten years with an annual fixed rent of $112,500, payable in monthly installments of $9,375 on the first day of each month, together with all applicable real estate taxes as "additional rent." Clause VII of the lease further provided that in the event Universal should default in the payment of the "fixed rent for more than ten days, or . . . commits any act of bankruptcy or files a petition under any bankruptcy or insolvency law . . . Lessee shall be deemed to be in default hereunder, and: (a) Lessor may immediately or at any time thereafter and without demand or further notice make entry and repossess, . . . and thereupon this lease shall terminate . . . ." It is undisputed that the landlord, pursuant to Clause VII of the lease, did not "make entry and repossess."

Of the three claims filed by the landlord in the bankruptcy proceedings, only a portion of Claim 294 is challenged and contested in this review of the Bankruptcy Judge's order of August 17, 1972.[4] Claim 294, which embraced the time period of August 5, 1970 to Octo-

ber 20, 1970, was filed as a cost of administration claim pursuant to Section 64(a)(1) of the Bankruptcy Act for the use and occupation of the landlord's premises by the receiver during the aborted Chapter XI proceedings.

For the period September 1, 1970 to October 20, 1970, the Bankruptcy Judge allowed the landlord $18,395.24 as a use and occupation expense in accordance with Section 64(a)(1) of the Bankruptcy Act, less the amount of $9,375 paid by the receiver, or a net sum of $9,020.-24. This disposition of the foregoing elements of Claim 294 is not here questioned. What is disputed, however, is the treatment of the period August 5, 1970 to August 31, 1970. Instead of according the landlord a first priority status as a cost of administration under 64(a)(1) of the Bankruptcy Act, the Bankruptcy Judge, in reliance upon In re Celian, 41 F.2d 560 (E.D.Pa.1930), allowed $9,738.63 as a rent priority claim pursuant to Section 64(a)(5) of the Bankruptcy Act. It is only that section of the Bankruptcy Judge's order which is challenged in this review.

### III. Discussion

For forty-three years In re Celian has been the law of this district and circuit and has been generally uniformly followed here, although the ruling has been repeatedly rejected by other circuits, which have been called upon in recent years to consider the same issue, as well as being criticized in scholarly treatises and by legal commentators.

In Celian the bankrupt was a lessee of premises whose lease provided that the rent be payable in monthly installments on the first day of each month. On June 10, 1929 a petition in bankruptcy

---

4. In Claim 351, the time period encompassed was from October 21, 1970 to December 17, 1970. Since this claim represented use and occupation of the bankrupt's premises by the trustee in bankruptcy, the Bankruptcy Judge allowed the claim in the net sum of $22,695.18 as a cost of administration pursuant to Section 64(a)(1) of the Bankruptcy Act.

Claim 352, which covered the period May 1, 1970 to August 4, 1970, was filed as a rent priority claim in accordance with Section 64(a)(5) of the Bankruptcy Act and was allowed in the amount of $15,959.-17 plus $9,738.63 (which was disallowed as a cost of administration under Claim 294) for a total of $25,697.80.

was filed and a receiver appointed, who occupied the bankrupt's premises from June 10 to June 27, 1929. On the date of the filing of the petition, the rent had neither been paid on June 1st nor for the two prior months and therefore the tenant was in default under the lease. The landlord filed (1) a rent priority claim against the receiver for the period June 1 to June 10th and (2) an administration expense claim for use and occupancy by the receiver from June 10th to June 29th.[5] The Bankruptcy Judge disallowed the use and occupation claim but granted the landlord leave to file an amended proof of claim as a rent priority for the entire month of June.

Judge Kirkpatrick, in a two-page opinion, which contained no citations of authorities whatsoever articulating the legal underpinnings for this ruling, affirmed the Bankruptcy Judge, stating:

"On June 1, the tenant was in default but was in possession of the premises. By the sixteenth paragraph of the lease, the leasehold could have been terminated at the option of the lessor upon this or any other default. The landlord, however, did not elect to avail himself of this right. There was nothing in the lease which required him to do so, or which automatically terminated the lease upon failure to pay rent. The landlord on June 1st had the right to allow the lease to remain in force and accept the tenant's obligation to pay the rent (secured by his preference under the law of Pennsylvania in event of the tenant's bankruptcy). This is what he did. . . . The point is that on the 10th of June, when the receiver was appointed, the tenant still had the right of possession for the entire month of June. To this right the receiver succeeded. By virtue of it he was entitled to occupy the premises until the end of June or possibly until the landlord declared the lease forfeited as of an earlier date (as such for-

feiture apparently was not declared this latter point is not material). For such possession he was not liable to pay the value, nor may the amount be claimed against him for use and occupation as an expense of preserving the estate." 41 F.2d at 560–561.

Since the legal precedents for *Celian* were not clearly enunciated, one can only conjecture as to the possible authorities underlying the result reached therein. One can advance the contention—and cogently so—that Judge Kirkpatrick was adhering to the common law rule that rent is payable on the date designated and is non-apportionable. Therefore, a receiver who occupies a bankrupt's premises subsequent to the date on which the rent is due, could be subrogated to the interests of the tenant for the remainder of the rental term in question. In order for one to have a clear understanding as to the state of the law on this subject in 1930, I have sketched below some of the decisions written prior to *Celian*.

A. Pre-*Celian* Decisions

In 1909 the Second Circuit adopted the position which is contra to *Celian*. In the case of In re Youdelman-Walsh Foundry Co., 166 F. 381 (2d Cir. 1909), a petition in bankruptcy had been filed on September 16th, with a receiver being appointed and occupying the bankrupt's premises from then until November 25th. The bankrupt's lease there required that rent be payable on the first of each month. The Court at p. 382 commented:

"The receiver contends that he is not liable for rent prior to the 1st of October, inasmuch as he insists that the landlord has a provable claim against the bankrupt estate for his rent for the month of September, and that the receiver is entitled to the benefit thereof for the portion of that month in which he was in possession of the premises. This contention seems to

5. The opinion does not disclose why the June 29th date was used rather than June 27th, since the latter date apparently rep-

resented when the receiver terminated his occupation of the landlord's premises.

be justified by some authorities; but this court has held in a number of instances that if the receiver is actually in possession, for the purpose of preserving the estate, during a certain number of days, he should pay, as part of the expenses of maintaining the estate, the pro rata rent, at a reasonable value, for that time, and in the same way this court has held in a number of instances that the receiver is entitled to the benefit of being compelled to pay only a reasonable value for the property, if the rental value happens to be greater because of some contract liability which will result in a claim against the estate in the hands of the trustee, or against the bankrupt himself, if he should subsequently continue with the lease."

In re Sherwoods, 210 F. 754 (2d Cir. 1913), similarly upheld the concept that rent and taxes could be apportioned with the receiver bearing his fair share of the expenses during his occupancy.

In Matter of Cort and Gold, 39 Am. Bankr.R. 607 (N.D.Ohio 1917), where the Court refused to follow In re Youdelman-Walsh Foundry Co., rent was payable on the 15th of each month and a petition in bankruptcy was filed on the 18th of the month. In denying the landlord's claim seeking cost of administration for the month during which the petition was filed, the Court stated emphatically at p. 610:

"The logic of the situation, as well as the equities seem to me to be in favor of the contention of the trustee; that is that where under a lease rental has fallen due at a date prior to bankruptcy, covering a certain period, and the trustee or receiver occupies the premises during that period, he would not be liable as trustee, to the landlord, unless the landlord acting under some provision of the lease had terminated the lease and thus ended the rights of the lessee thereunder. In other words, the landlord, entitled to payment for the month in advance and not exacting payment is in the same position as any other creditor who has

delivered goods and waived payment in advance; that he has a *claim* against the estate, but not a claim which is 'costs of administration.'

Equitably a creditor who has sold goods to a bankrupt without exacting payment in advance, a part or all of the goods coming into the hands of the trustee, stands in as strong a position as a landlord who has waived payment on the 'rent day.' Such a creditor has parted with title, the trustee takes the goods and the creditor has a provable debt. 35 Cyc. 327

There is no more apparent reason why the landlord should be paid as 'costs of administration' for the time the trustee occupies his premises, when tenant owes for such time, than that a creditor should be paid as 'costs of administration' for goods the trustee uses, for which the tenant owes such creditor."

Six years later, Judge Learned Hand, in a departure from earlier Second Circuit rulings, denied a landlord in a bankruptcy proceeding apportionment of the rent. In re Manhattan Piggly-Wiggly Corp., 296 F. 944 (S.D.N.Y.1923). This decision, however, was criticized and distinguished by the Second Circuit in its very detailed and thorough opinion of Oscar Heineman Corp. v. Nat Levy & Co., Inc., 6 F.2d 970, 43 A.L.R. 727 (2d Cir. 1925). See also, Annotation—Right of lessor to compensation out of estate for use of premises by receiver or assignee for creditors without adopting lease. 43 A.L.R. 734.

A year later, the Seventh Circuit aligned itself with the Second Circuit in noting that:

"Bankrupt's whole estate has been taken and is being administered in bankruptcy. If the rent for the premises for the time after the petition was filed is not to be paid therefrom, we must find that a court has the power to take and use property of a third party without obligation to pay therefor. . . . The simple fact is that, under the authority and direc-

tion of the court, the premises were used, and justice and fair dealing require that the owner shall receive what the use was reasonably worth. . . ." In re Preisler, 13 F.2d 116, 117 (7th Cir. 1926)

The cases discussed above represent most of the decisions which analyzed this issue prior to 1930, and are illustrative of what apparently were the two prevailing schools of thought in 1930 when Judge Kirkpatrick decided In re Celian.[6]

### B. Post-*Celian* Developments

In re Newark Shoe Stores, Inc., 2 F. Supp. 384 (D.Md.1933) is distinguishable from *Celian*, since it deals with proof of claims rather than priorities, but it holds that where a tenant is obligated to pay the rent on the first of the month and the tenant is adjudicated to be a bankrupt on the 19th of the month, since in Maryland rent is non-apportionable, the landlord is entitled to rent for the entire month, notwithstanding premises were not occupied by the bankrupt during any part of the month. To some extent, In re Owl Drug Co., 12 F.Supp. 446 (D.Nev.1935) is consistent with In re Newark Shoe Stores, Inc. In the 1935 decision the Judge applied California law, which maintained the rule of non-apportionment of rent, and permitted the landlord to recover the rent for the entire month where the tenant had been declared a bankrupt on the 10th, despite the fact that the landlord had accepted rental from the receiver for the balance of the month under purportedly a different theory.

California in 1937 followed *Celian*, citing it in support of the result reached in a case wherein the Court held that a receiver in bankruptcy was not liable for the rent for the remainder of the month

in which the bankruptcy petition was filed. In re Benguiat, 20 F.Supp. 504 (S.D.Cal.1937). In light of a recent decision, however, there is a serious question as to whether In re Benguiat is still good law in California. See In re Buttonwood Securities, Inc., 349 F.Supp. 273 (S.D.Cal.1972).

Additionally, in 1937, Judge Learned Hand, then on the Court of Appeals, declared in unequivocal language that his earlier decision of In re Manhattan Piggly-Wiggly Corp. was no longer the law of the Second Circuit.

"In Re Manhattan Piggly-Wiggly Corp. (D.C.) 296 F. 944, I held that the bankrupt and its receiver are entitled to possession gratis, until the lessor at least asks the court to be relieved of the stay, and that if he does not, he cannot recover for use and occupation; . . . But this court overruled that decision in Oscar Heineman Corp. v. Nat Levy & Co., 6 F.2d 970, . . . where we held that a chancery receiver was liable for use and occupation from the moment of his entry, regardless of the lessor's inaction." Central Manhattan Properties, Inc. v. D. A. Schulte, Inc., 91 F. 2d 728, 730 (2d Cir. 1937)

When the Eastern District of Pennsylvania last reviewed *Celian*, the Court chose to reaffirm *Celian* as being the law of this district. In re Jay and Dee Store Co., 37 F.Supp. 989 (E.D.Pa. 1941). There were no references to or discussion of other decisions, however, which had rejected *Celian*.

Since 1941 the Second Circuit has on at least two occasions reconsidered the *Celian* doctrine, and on each opportunity the Court has disapproved of it and rejected *Celian* as being inequitable. In re North Atlantic and Gulf Steamship

---

6. There are a number of cases which, while undeniably distinguishable from *Celian*, could be read for the proposition adopted in *Celian* that the receiver in bankruptcy succeeds to the favorable position of the bankrupt. In re Budd, 239 F. 307 (2nd Cir. 1917); In re Bisenius, 23 F.2d 967 (D.Minn.1927). Conversely, there are other decisions which, while again clearly distinguishable from *Celian*, arguably reject *Celian* and permit apportionment of rent at a fair and reasonable value. Gardner v. Gleason, 259 F. 755 (1st Cir. 1919); In re Nathanson, 24 F.2d 760 (D.Mass.1927); In re Chakos, 24 F.2d 482 (7th Cir. 1928).

Co., 166 F.Supp. 29 (S.D.N.Y.1958), aff'd. sub nom. 120 Wall Associates v. Schilling, 266 F.2d 548 (2d Cir. 1959); S & W Holding Co. v. Kuriansky, 317 F.2d 666 (2d Cir. 1963).

In *S & W Holding Co.*, the lease required that rent be paid on the first of the month. In that case the bankrupt failed to pay the rent on February 1st and a petition in bankruptcy had been filed on February 9th. In relieving the bankrupt lessee of any liability for rent subsequent to the filing of the petition and appointment of a trustee, the Court at pp. 668–669 of 317 F.2d wrote:

"Although at common law the rent is due in full on the agreed date without apportionment, this rule has been modified in bankruptcy proceedings. The debtor-lessee is held liable for the accrued rent only to the date of bankruptcy while the liability of the trustee for use and occupancy arises from that date. 120 Wall Associates v. Schilling, supra; Oscar Heineman Corp. v. Nat Levy & Co., supra; In re Sherwoods, Inc., supra; In re Youdelman-Walsh Foundry Co., 166 F. 381 (E.D.N.Y.1909); but see In re Benguiat, 20 F.Supp. 504 (S.D.Cal.1937); In re Celian, 41 F.2d 560 (E.D.Pa. 1930). The modified rule achieves an equitable result. It should not lie with the trustee, who is charged with doing equity, to presume on the lessor to the extent of not paying for his use and occupancy during the first month after bankruptcy. On the other hand, the lessor is not permitted to accrue rent beyond the period during which the occupancy is that of the bankrupt."

Last fall a Federal District Judge in California was confronted with the same legal dilemma as I am today, that is, having to decide whether In re Benguiat, the California equivalent of *Celi-*

*an,* which had been the rule of law in California for 35 years, should still be followed, notwithstanding the withering away of the doctrine in other jurisdictions. The case of In re Buttonwood Securities, Inc., 349 F.Supp. 273 (S.D.Cal. 1972) involved a mixture of a Chapter XI action and proceedings under the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa et seq. In a thoughtful and analytical opinion, Judge Nielsen traced the history of the doctrine and its evolution and concluded:

"A review of the current law, as well as plain fairness, convinces me that the case of a bankrupt lessee should constitute one such exception [to the principle of non-apportionment of rent]. It does not fit this court's concept of justice, nor of the statute's intent, to allow priority payment under § 64(a)(1) to other creditors who service the needs of bankruptcy administration while denying it to a lessor who supplies the premises indispensable to the proceedings.

This court, therefore, finds the rule in *Benguiat* an outmoded adherence to common law principles and declines to follow it, relying instead upon those cases which hold the trustee liable for administrative rent from the date of bankruptcy."

Id. at 278.[7]

To conclude this survey, I want to focus on two treatises which have examined and commented upon the *Celian* doctrine. After explaining the operations of the doctrine, Collier on Bankruptcy, 14th Ed., Vol. 3A, ¶ 62.14 at p. 1515 states the following:

"The better view, however, looks with disfavor upon this kind of sponging on the landlord and requires payment as cost of administration of the *pro rata* rent due for the time of occupancy by the court's officer."[8]

7. This Court is not aware as to whether this decision has been appealed.

8. One should also compare In re Millard's, Inc., 41 F.2d 498 (7th Cir. 1930); Wie-

meyer v. Koch, 152 F.2d 230 (8th Cir. 1945); In re House of Gus Holder, 91 F.Supp. 841 (D.N.J.1950); Diversified Services, Inc. v. Harralson, 369 F.2d 93 (5th Cir. 1966).

In accord is P. J. Palmer, Jr., "Recent Bankruptcy Cases" in 33 Ref.J. 54, 55 (1959) where it was noted:

"There would seem to be no validity, therefore, to a contention that the landlord should exchange the use of his premises after bankruptcy for a fifth priority claim against the estate."

### C. The Instant Matter

In the matter at bar, the perceptive Bankruptcy Judge below, Emil Goldhaber, considered and saw little merit in the position articulated in Collier's, *supra*. At pp. 5–6 of his opinion,[9] he writes:

"I suppose that any legislative enactment of an order of priorities which permits some classes of unsecured creditors to share in the assets of a bankrupt's estate ahead of others may be considered 'sponging.' It used to be, under the Bankruptcy Act of 1800, that priority in payment was given to debts due the United States, and, in effect, granted priority to expenses of administration. This was, for all practical purposes, a sponging on other creditors. Then the bankrupt himself was entitled to assert a prior claim, upon certain conditions, to five percent of the assets, and under further conditions, to ten percent. Later, the Acts of 1841, 1867, 1898 and 1938 prescribed patterns of priority distribution under the Act as it exists today. But any order of priority is artificial; any order which creates a superiority for one class of creditor 'sponges' on those whose claims are inferior. If it were possible in every bankruptcy administration to pay all the claims of all the creditors, as well as to pay the cost of carrying on the proceeding, no pattern of priorities would be needed. But the order of priorities set forth in Section 64 are artifical creations which manifest Congressional desire to effect an equitable distribution of the bankrupt's assets among his creditors. But each priority 'sponges' upon the priority accorded to an inferior claim. So I am not impressed by *Collier's* argument that *Celian*, in giving a landlord a fifth priority instead of a first, 'sponges' on the landlord."

While the foregoing quotation might be technically correct, at least as to the rationale underlying the creation of the order of priorities, still there should be a certain consistency in the application of specific facts to and within the various "artificial" priorities established by Congressional mandate.

The rights and priorities of creditors are determined as of the date of the filing of the petition in bankruptcy, United States v. Marxen, 307 U.S. 200, 59 S. Ct. 811, 83 L.Ed. 1222 (1939); Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911); In re Van Horn, 246 F. 822 (3rd Cir. 1917); Stolzenbach v. Penn-American Gas Coal Co., 295 F. 628 (3rd Cir. 1924). However, permitting the lessor to apportion the rent and recover the fair rental value as a cost of administration for the use of his premises by the receiver, trustee, or other officer of the Court, is not inconsistent with the aforementioned cases. This right is clearly within the ambit of the plain meaning of Section 64(a)(1) of the Bankruptcy Act in that subsequent to the filing of the petition the payment of rent is an actual and necessary cost incurred in preserving the bankrupt's estate and therefore it should be regarded as an administration expense.

The landlord in the instant matter is not seeking a first priority claim for any time prior to August 5th when the receiver was appointed, since it is undisputed that he has only a fifth priority rent claim for the rent for which the bankrupt was in arrears. Regardless of whether or not apportionment of the rent is allowed here for events subsequent to the filing of the petition, the landlord's pre-petition status will not be

---

9. The opinion of the Bankruptcy Judge is attached to the Certificate of Review as Exhibit A.

altered. Therefore, this is not a case such as in United States v. Marxen, *supra*, where the Supreme Court disallowed recognition of transactions which occurred subsequent to filing the petition which would have realigned the priorities of creditors as they existed prior to the filing of the petition.

Often, whether or not a landlord was accorded a first priority or a fifth priority would be inconsequential since the assets of the bankrupt would be adequate to satisfy those claims, although they might be insufficient to reach general creditors. But here, should the landlord not recover as a cost of administration, he will not be able to recover anything because of the limited assets of the bankrupt. This result would be particularly harsh and unfair for the landlord since it is uncontroverted that by occupation of the premises by the receiver the physical assets of the bankrupt, including many sensitive electronic devices, were preserved for later disposition at an auction on the premises.

■■ I hold today that the receiver, trustee or other officer of the court when occupying the premises leased by a bankrupt is liable to the landlord for the reasonable and fair rental value of the premises for the duration of his stay while he was attempting to preserve the estate. This holding makes eminent sense, and I submit it is in complete accord with the Congressional mandate as authorized by Section 64(a)(1) of the Bankruptcy Act.

Since there are no facts in dispute and it has been previously determined by the Bankruptcy Judge that the figure of $9,738.63 is the reasonable, *pro-rata* rental value for the period August 5th to August 31st, little would be gained by remanding this matter to the Bankruptcy Judge for him to enter an order consistent with this opinion. Therefore, it is herein concluded that the landlord is permitted to recover as a cost of administration the sum of $9,738.63 and that with this modification Claim 294, as previously determined by the Bankruptcy Judge, is affirmed.