In re COAL–X LTD., "76", Debtor.

C & C COMPANY, a West Virginia corporation, successor in interest to Walter Kellogg, Trustee, Plaintiff,

v.

SEATTLE–FIRST NATIONAL BANK, Defendant.

Bankruptcy No. 84C–02237.
Adv. No. 84PC–1651.
Nos. 86–C–0367W, 86–C–0389W.

United States District Court,
D. Utah, C.D.

Oct. 7, 1986.

Michael N. Zundel, Salt Lake City, Utah, for plaintiff.

Peter W. Billings, Jr. and Gary E. Jubber, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on cross appeals from the bankruptcy court. A hearing was held on September 12, 1986. Seattle First National Bank was represented by Peter W. Billings, Jr., and Gary E. Jubber. C & C Company was represented by Michael N. Zundel. At the conclusion of the hearing, the court took the matter under advisement. The court has reviewed and considered carefully the parties' oral arguments, the record on appeal, and the briefs, including various authorities cited therein and additional authorities. Now being fully advised, the court renders the following memorandum decision and order.

### Background and Statement of Undisputed Facts

On May 1, 1975, Christian Land Corporation ("Christian") entered into a lease agreement with C & C Company ("C & C"). Basically, C & C was granted the right to mine coal on the leased premises for a period of 15 years (i.e., until April 30, 1990) or until all mineable coal was removed.

On March 22, 1976, C & C subleased the premises to Coal–X, Inc.; and on April 7, 1976, Christian consented to the sublease. In accordance with the sublease arrangement, and during the period relevant to this appeal, Coal–X, Inc., agreed to pay a minimum annual rental of $85,000 and to comply with the provisions of the lease agreement as modified by the Consent to Sublease.

On October 4, 1976, Coal–X, Inc., assigned its interest in the sublease to a Utah limited partnership, Coal–X Ltd., "76", who is the debtor. (Coal–X Ltd., "76" is hereinafter referred to as "Coal–X," the "debtor," or the "lessee.") Coal–X's principal assets consisted of coal mineral interests and extraction equipment located in West Virginia.

On November 26, 1981, Seattle First National Bank ("Seafirst") loaned $760,000 to Coal–X. On December 19, 1981, Coal–X granted Seafirst a security interest in its assets. Seafirst does not dispute that at the time of the creation of its security interest, substantially all of Coal–X's collateral was on the leased premises.

Coal–X failed to make the $85,000 annual rental payment which came due on May 1, 1984. Up until this time, Coal–X had been current on its minimum annual payments.

On May 18, 1984, Coal–X filed a petition for voluntary relief under Chapter 11 of the Bankruptcy Code. The case was converted to a Chapter 7 proceeding on September 27, 1984; and the bankruptcy court appointed a trustee.

On October 2, 1984, the trustee filed an application for authority to sell coal mining equipment located on the leased premises free and clear of liens, with valid liens to attach to the sale proceeds. Following a hearing on October 19, 1984, the bankruptcy court entered an order authorizing the sale. The equipment was sold and the proceeds made available for disbursement.

On October 5, 1984, C & C and Christian filed a Notice of Lien pursuant to 11 U.S.C. § 546(b) against the debtor's estate, assert-

ing a landlord's lien on the debtor's personal property brought onto the leased premises, for rent due to them, royalties, storage, and damages, pursuant to West Virginia law and the lease and sublease agreements.[1] The Notice of Lien was amended on October 18, 1984.

On October 18, 1984, the trustee commenced an adversary proceeding to avoid the landlord's lien. The lien was avoided on March 7, 1985, in accordance with 11 U.S.C. § 545, and automatically preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

As successor in interest to C & C's and Christian's landlord's lien, the trustee brought an adversary proceeding on December 6, 1984, to determine the validity, priority, and extent of the preserved landlord's lien in relation to the security interest in favor of Seafirst on the debtor's personal property. C & C subsequently purchased the trustee's cause of action.[2]

Thereafter, C & C and Seafirst filed cross motions for summary judgment. The matter was heard on August 27, 1985. The bankruptcy court ruled from the bench (1) that the landlord's lien for rent has priority over Seafirst's interest in the debtor's personal property and (2) that the landlord's lien for rent is subject to apportionment. The bankruptcy court then ruled that the apportionment period ran from May 1, 1984 (the date the annual rental payment became due), to October 31, 1984 (the date the trustee rejected the lease and surrendered the premises). Accordingly, the

court ordered that C & C was entitled to six months' rent, or $42,500. No interest was awarded.

A Summary Judgment was entered on or about April 18, 1986. According to the Summary Judgment, the bankruptcy court found (1) that on May 1, 1984, the debtor-lessee was obligated to pay the landlords the minimum annual rental of $85,000 and that such payment was rent under West Virginia law; (2) that the West Virginia courts, if presented with the question today, would adopt the rule of apportionment with respect to rents payable by the debtor-lessee[3] or, in the alternative, that the bankruptcy court has the equitable power to apportion rents; and (3) that C & C, as successor in interest to the trustee, is the holder of a valid lien against property of the estate, for apportionable rent in the amount of $42,500. The Summary Judgment then ordered that the validity, priority, and extent of C & C's lien be determined as follows: (1) that the lien is valid; (2) that the lien is prior in right to any lien of Seafirst; (3) that the lien encumbers all personal property located on or taken from the leased premises and the proceeds derived therefrom to the extent of $42,500; (4) that the amount of the lien shall not be reduced by the amount recovered by C & C or Christian on account of their administrative claims; and (5) that C & C's request for interest is denied.

On May 2, 1986, the bankruptcy court approved a proposed settlement agreement between the trustee, C & C, and Christian

1. Absent the commencement of bankruptcy proceedings, West Virginia law details the procedures that must be followed by a landlord to distrain the lessee's personal property by distress or action for rent due. *See, e.g.,* W.Va. Code §§ 37–6–12 & –13. However, once a debt-or-lessee files a petition in bankruptcy, bankruptcy law becomes applicable and somewhat alters the necessary procedures. If the landlord does not distrain the lessee's personal property before the petition date, 11 U.S.C. § 546(b) provides that the landlord perfects its interest in the distrainable property by serving notice on the debtor-lessee rather than actually distraining the property or commencing action. In this case C & C and Christian did not exercise their distraint rights prior to the debtor-lessee's petition in bankruptcy. Therefore, as mentioned

above, C & C and Christian served the debtor-lessee postpetition with a Notice of Lien.

2. What was actually assigned to C & C was not a cause of action under the trustee's avoiding powers but the preserved lien itself, the validity, priority, and extent of which would have to be determined by litigation.

3. This court does not need to address the issue of whether the West Virginia courts today would follow the rule of apportionment since it is the opinion of the court that bankruptcy law allows a bankruptcy court, in the exercise of its equitable powers, to order apportionment of rents even though state law follows the common law rule of nonapportionment in typical landlord-tenant situations.

with regard to administrative rent. In accordance with the settlement agreement, the court ordered payment of C & C's and Christian's administrative claims for the debtor's postpetition use and occupancy of the premises.

### The Parties' Contentions on Appeal

On appeal, Seafirst contends that although the bankruptcy court was correct in applying the apportionment rule, it erred in apportioning the rent for the period from May 1, 1984 (the rental due date), to October 31, 1984 (the date the trustee rejected the lease and surrendered the premises). Seafirst claims that the apportionment period should cut off on May 18, 1984, the date the debtor-lessee filed its bankruptcy petition. Any claim for rent accruing postpetition, according to Seafirst, is an administrative claim against the debtor's estate for the debtor's use and occupancy of the premises. Seafirst also contends that the bankruptcy court erred in determining that the preserved landlord's lien should not be reduced by the amount recovered by C & C and Christian on account of their administrative claims. Further, Seafirst contends that the bankruptcy court erred in determining that the $85,000 annual payment, required to be made by the debtor-lessee pursuant to the purported sublease arrangement, is rent entitled to the protection of the West Virginia statutes.[4]

On cross appeal, C & C contends that the bankruptcy court erred in apportioning the rents secured by the landlord's lien and that under West Virginia law C & C is entitled to the entire annual rental payment of $85,000 which came due on May 1, 1984. C & C also contends that the bankruptcy court erred in refusing to add interest to the amount secured by the landlord's lien as contemplated by West Virginia law.

### Discussion

1. *Amount of Rent Secured by the Landlord's Lien*

West Virginia law permits a landlord to distrain a lessee's personal property brought onto the leased premises for rent "justly due" under the lease and grants the landlord a lien for distress of rent. Specifically, W.Va.Code § 37-6-12 provides that distress is based upon the landlord's affidavit that the amount of money to be distrained for is justly due to the landlord for rent reserved upon the contract. Furthermore, competing liens on the lessee's personal property are subject to the landlord's distress if the competing liens were created after the property came onto the premises, even if the distress is for rent that had not yet accrued at the time the competing liens were created.[5] See W.Va.Code § 37-6-13.

C & C and Christian contend that their statutory lien covers, among other things, the entire $85,000 annual rental obligation that came due and payable on May 1, 1984. Although C & C and Christian may be correct in asserting that under West Virginia law they would be entitled to distrain the lessee's personal property for the full amount of the unapportioned rent which came due on May 1, 1984, this court is of the opinion that in the context of a debtor-lessee's bankruptcy, the bankruptcy court has the equitable power to apportion the rent obligations of the debtor-lessee and thereby limit the amount of rent that can be claimed by a landlord and secured by a landlord's lien to that which has actually accrued prepetition. See 11 U.S.C. § 105(a). The parties cannot apply and consider state law alone without regard to the overriding concerns and fairness considerations involved in a bankruptcy situation. Indeed, once a bankruptcy proceeding has been instituted and the lessee becomes a debtor in bankruptcy, a whole new

---

**4.** Seafirst contends that only $25,000 of the $85,000 annual payment is actually rent. This court, however, affirms the bankruptcy court's determination that under West Virginia law the entire $85,000 annual payment may properly be construed as a rental obligation of Coal-X.

**5.** Seafirst acknowledges that a landlord's lien for rent on the debtor-lessee's personal property that was brought onto the leased premises has priority over Seafirst's consensual lien on the same property. The issue raised in this appeal is the appropriate amount of rent underlying the landlord's lien in this case and thus the extent and value of the lien.

set of laws is brought into play which can substantially affect parties' relationships and interests, often altering or restricting their rights and obligations.

■ The purpose of bankruptcy law to effect a fair and equitable distribution of the estate's limited assets suggests that apportionment of rents is appropriate in the case of a lessee in bankruptcy in order to limit the amount of a landlord's prepetition rental claim and thus the value and extent of the landlord's lien for this claim.[6] C & C contends, however, that when a trustee avoids and then preserves a landlord's lien for the benefit of the estate, nonapportionment of the debtor's rental obligation underlying the lien is in the best interest of the estate. It must be remembered, though, that a landlord's lien that is preserved under 11 U.S.C. § 551 cannot be greater than that which is avoided by the trustee under 11 U.S.C. § 545. By avoiding and preserving the lien, the trustee simply steps into the landlord's shoes and succeeds to the landlord's rights with regard to the lien. Clearly, the trustee cannot and does not obtain more than what the landlord could and should be able to claim against the debtor-lessee for rent due.

For the above reasons and in light of the protections afforded landlords through the allowance of administrative claims for postpetition rent and damages, the court is convinced that apportionment of rents is appropriate in this case even though West Virginia law may apply the rule of nonapportionment when determining the amount of rent due and payable to the landlord in the typical landlord-tenant situation.

The court in *S & W Holding Co. v. Kuriansky*, 317 F.2d 666 (2d Cir.1963), allowed an apportionment of rent in a bankruptcy situation even though the state law followed the rule of nonapportionment. The court stated in relevant part:

> Although at common law the rent is due in full on the agreed date without appor-

tionment, this rule has been modified in bankruptcy proceedings. The debtor-lessee is held liable for the accrued rent only to the date of bankruptcy while the liability of the trustee for use and occupancy arises from that date. [Citations omitted]. The modified rule achieves an equitable result.

*Id.* at 668–69. Similarly, the court in *In re Buttonwood Securities, Inc.*, 349 F.Supp. 273 (S.D.Cal.1972), determined that although the principle of nonapportionment of rent is unquestionably the law in California and that at common law rent does not accrue on a day-to-day basis but falls due in full on the agreed date without apportionment in most landlord-tenant situations, the rule of nonapportionment should be modified in bankruptcy proceedings. The court observed: "A review of the current law, as well as plain fairness, convinces me that the case of a bankrupt lessee should constitute [an exception to the rule of nonapportionment]." *Id.* at 278. *See also In re Universal Medical Services, Inc.*, 357 F.Supp. 1137 (E.D.Pa.1973) (lessee is liable for rent actually accruing up to petition date; rent accruing after that date is regarded as an administrative expense).

■ As the foregoing indicates, the bankruptcy court was correct in determining that rent should be apportioned in this case. However, this court is of the opinion that the bankruptcy court erred in allowing the rents to be apportioned up to the date the trustee rejected the lease.[7] Instead, the claim for unpaid rent should be apportioned to include only that period from the rental due date to the petition date; and the landlord should only be entitled to rent that has actually accrued prepetition. Any claim for rent accruing postpetition under the bankruptcy law applicable to this case is an administrative claim against the estate, but only for the reasonable value of the debtor's actual use and occupancy of

---

6. The court is convinced that the issue of the extent and value of the preserved statutory landlord's lien in the trustee's hands, and thus in C & C's hands, turns on the amount of the landlords' underlying rental claim against the debtor.

7. It should be noted that a trustee's rejection of a lease relates back to the petition date pursuant to 11 U.S.C. § 365(g)(1) (rejection constitutes a breach of the lease immediately before the petition date).

the premises during the administration of the estate.[8] *See* 11 U.S.C. § 503(b)(1)(A).

The appropriate amount of C & C's and Christian's prepetition claim for rent is therefore 18/365th of the $85,000 annual rental obligation that came due on May 1, 1984. Accordingly, C & C's and Christian's statutory lien for distress of rent is for that amount. Since the lien was avoided by the trustee and preserved for the benefit of the estate in accordance with 11 U.S.C. §§ 545 & 551, the trustee stepped into the landlords' shoes and obtained the landlord's lien. As mentioned above, C & C subsequently purchased the trustee's cause of action with regard to the landlord's lien; therefore, C & C is entitled to 18/365th of the $85,000 annual rental obligation.

### 2. *Interest*

 C & C claims that the bankruptcy court erred in refusing to add interest to the amount secured by the landlord's lien as contemplated by West Virginia law. This court agrees with C & C's contention. W.Va.Code § 37–6–9 provides that in any action for rent, interest is allowed the same as in actions founded on other contracts. And West Virginia statutory and case law clearly provides for interest in contract actions. *See, e.g.,* W.Va.Code §§ 56–6–11, –27, –31. Since distress and claims under a statutory landlord's lien are actions for rent, the court is of the opinion that under West Virginia law C & C's and Christian's landlord's lien included and secured the interest that actually accrued from the rental due date to the petition date (i.e., the interest that matured prepetition). C & C is therefore entitled to interest on 18/365th of $85,000, accruing from May 1, 1984, to May 18, 1984.

Accordingly,

IT IS HEREBY ORDERED that the bankruptcy court's Summary Judgment is reversed to the extent that it is inconsistent with the foregoing memorandum decision.

Specifically, C & C is entitled to 18/365th of the $85,000 annual rental, plus interest that accrued from May 1, 1984, to May 18, 1984.

---

8. If the apportionment rule were not applied to the landlord's prepetition rental claims, a double rental obligation could result since the landlord would be claiming rent due under the lease, pursuant to its statutory landlord's lien, for the same period that the debtor may be liable for administrative rent. Although C & C is asserting the trustee's cause of action in this case, and not a cause of action as a landlord, the trustee brought this action only after avoiding the landlord's lien and succeeding to the landlords' rights under the lien.